SIZEMORE ET AL. *v.* PUBLIC SERVICE COMMISSION ET AL.

[No. 19,239. Filed November 2, 1961. Rehearing denied December 14, 1961. Transfer denied February 13, 1962 with opinion 180 N. E. 2d 232.]

*George L. Diven,* Public Counselor, for appellants.

*Roger D. Branigin,* of Lafayette, *William R. Hunter,*
of Winchester, *Claude M. Warren, Alan W. Boyd, Jerry
P. Belknap* and *Barnes, Hickam, Pantzer & Boyd,* of
counsel, all of Indianapolis, for appellees General
Telephone Company of Indiana, Inc., The Eastern In-
diana Telephone Company, United Telephone Compa-
ny of Indiana, Inc.

*M. Elliot Belshaw* and *Bomberger, Wilson, Crites &
Belshaw,* of counsel, of Hammond, for appellee Illinois
Bell Telephone Company.

## OPINION A

PFAFF, C. J.—Appellants have brought here for
judicial review a decision of the Public Service Commis-
sion dated August 1, 1958, relating to the matter of
rates, tolls, charges, rules and regulations applicable
to intrastate message toll telephone service in the
State of Indiana pursuant to Acts of 1957, ch. 189,
§54-443, Burns' 1951 Replacement (Supp.). The pro-
ceeding before the Commission was numbered as Ex
Parte No. 27660.

It appears from the record that one company, not a
party to this review, hereinafter referred to as Indi-
ana Bell, owns and operates the basic telephone net-
work in Indiana; that there are 185 other telephone
companies and Indiana Bell has toll agreements with
115 of them; that in 1957 approximately 33,500,000
toll messages were interchanged between Indiana Bell
and other companies in Indiana and the dollar volume
was approximately $28,000,000; that more than half
of the messages originated in telephone exchanges
other than Indiana Bell.

This one company, Indiana Bell, duly filed its peti-
tion for an increase in rates and a general increase
was granted by an order entered on April 3, 1958,
Commission Cause No. 27493, although a reduction

was made for some types of calls. The order or decision in that cause was not challenged.

Thereafter, on the same date, without any petition or request for a rate increase and without notice or a hearing, the Commission, on its own motion, issued an order authorizing the increase of long distance telephone rates of all other companies to correspond with those of Indiana Bell. This order in what is designated as an Ex Parte proceeding stated that the Commission had entered into an investigation of the changes and revisions of the rates of Indiana Bell to determine what effect they might have on intrastate message toll rates generally. It made a finding that it has been the general practice of the Commission to apply a uniform schedule of message toll rates throughout the state, and that uniformity was necessary to avoid unjust discrimination and unreasonable preferences or advantages and to avoid confusion and complication in quoting and charging of rates.

On April 15, 1958, June, 1958, and June 9, 1958, patrons and rate payers of the territory served by Illinois Bell Telephone Company, patrons and rate payers of the territory served by the Moores Hill Telephone Company and Southeastern Indiana Rural Telephone Company, patrons and rate payers of the territory served by the General Telephone Company filed their respective motions to set aside the order entered in the Ex Parte proceeding, Commission Cause No. 27493, for lack of notice, hearing, and failure to comply with statutory requirements. All three motions are substantially the same except for identity of location and individuals. Omitting formal parts and signatures said motions read as follows:

"1. They are residents of the territory served by the Illinois Bell Telephone Company, a public

utility operating in the State of Indiana and under the jurisdiction of the Public Service Commission of Indiana.

"2. On April 3, 1958, the Public Service Commission of Indiana approved an order in Ex Parte No. 27660, wherein said Illinois Bell Telephone Company and numerous other telephone utilities were granted an increase in rates and charges applicable to intrastate message toll service in the State of Indiana.

"3. That said order was entered without formal petition on behalf of any affected utilities and without any statutory or legal proceedings being commenced or pending before the Public Service Commission of Indiana.

"4. Said order was issued without notice to the patrons, customers of any of the affected utilities or to the general public and said patrons, customers and general public were deprived of the right of hearing.

"5. Said order was issued without hearing, determination or finding of value of property involved or rate of return thereon or of service available to the patrons and customers of the utilities affected.

"6. That the order of said Public Service Commission of Indiana approved April 3, 1958 is improper, illegal and deprives the patrons and customers of said utility of property and rights without due process of law.

"WHEREFORE, the undersigned persons on their own behalf and on behalf of other persons similarly situated move that said order of April 3, 1958 be set aside and declared null and void."

Thereupon the Commission held a formal hearing and on May 5, 1958, entered an order reading as follows:

"The Commission, having heretofore on its own motion conducted a summary investigation of intrastate message toll rates within the State of Indiana, and as a result of such investigation, and in order to prevent improper or unlawful dis-

crimination, authorized telephone companies in Indiana furnishing intrastate toll services in any way connected with the toll facilities of Indiana Bell Telephone Company to file and make effective certain uniform and conforming rates, said procedures and authorizations having been a long and well established practice of the Commission for the fixing of such uniform intrastate toll rates;

"The Commission, now upon further consideration, is satisfied that sufficient grounds exist to warrant a formal hearing of the matters so investigated.

"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that a formal hearing be held with respect to the matters so investigated after proper notice to the utilities interested and to such other interested persons as the Commission shall deem necessary.

"IT IS FURTHER ORDERED that the mailing of a copy of this order to the utilities interested and to such other persons as the Commission shall deem necessary shall constitute the statement notifying such utilities and other interested persons of the matters under investigation."

That said notice of the hearing was published in 31 of the 92 counties of Indiana. No notice was published in the additional counties wherein patrons and rate payers of the utilities affected by the rate increases resided.

On June 12, 1958, hearing was had. Illinois Bell Telephone Company appeared as an intervenor. No other telephone utilities appeared in any capacity. George L. Diven, Public Counselor of Indiana entered a special appearance for the purpose of questioning the jurisdiction of the Public Service Commission of Indiana to enter an order increasing rates and moved that the action abate. Said special appearance and motion to abate reads as follows:

"Comes now George L. Diven, Public Counselor, and enters his appearance specially herein for the purpose of presenting the Motion to Set Aside the order of this Commission entered on April 3, 1958, and to question the jurisdiction of the Commission to fix any rates under this proceedings.

"It is specifically stipulated that by this appearance the requirements of legal notice and procedure for determining of rates is not waived and that the rate payers, patrons and the public who might be affected by any order on rates entered herein are not made parties to said Ex Parte proceeding for any purpose other than to present said motion and to question the jurisdiction of the Public Service Commission of Indiana to establish any rates or charges for telephone service by said proceedings as now pending, and said rate payers, patrons and public waive no rights they have and consent to no jurisdiction.

"Comes now George L. Diven, Public Counselor, and having appeared specially herein for the purposes and under the conditions set out therein, now moves that this proceeding abate for the following reasons:

"1. No proper statutory proceeding for determination of rates has been filed or is pending herein.

"2. Notice as required by statute has not been issued.

"3. The Public Service Commission of Indiana has no jurisdiction to hear evidence or establish rates in the manner or in the proceedings now pending.

"Further oral objection appears to a specific question. The question, objection and ruling are: Now, Mr. Roby, do you know what has been the custom in Indiana over this period of time that you have been with the Commission or prior thereto in regard to intrastate toll rates?

"Mr. Diven: To which we object, first, for the reason that there is no issue properly presented or pending before this Commission relative to the establishment of toll rates or any other rates, that there are no petitions pending in this

matter seeking the establishment of any rates, there is no legal proceeding which is now undergoing hearing for the establishment of rates; for the further reason that what might have been the custom of a Commission, this Commission or any other Commission or body would be absolutely immaterial and irrelevant to the issues of this case unless it can be shown that there was complete compliance with the statutes and laws of Indiana. The mere occurrence or precedent of something which is basically illegal within itself does not thereby establish a precedent which creates legality. For example, I might say we read daily of a bank being robbed, which might be a precedent for getting money out of a bank, which doesn't establish legality or propriety of a proceeding. It is absolutely immaterial and irrelevant and the answer here sought doesn't prove or dis-prove any issue before this Commission at this time."

The motion was overruled.

After hearing evidence the Commission entered its order on August 1, 1958, purporting to confirm its order of April 3, 1958. The finding of fact and order of the Commission reads in part as follows:

"1. That it has jurisdiction of the subject matter of this proceeding and all necessary parties thereto.

"2. That due notice of the hearing of this cause was given and published as set forth herein.

"3. That any lack of uniformity in message toll telephone rates for calls within this state would result in discrimination and confusion, injury to service, unnecessary expense to all concerned, customer dissatisfaction, and interference with the dialing of such calls by customers, and would be of no advantage to the public.

"4. That the fixing of uniform rates for all telephone companies in this state for message toll telephone service within this state in a single proceeding is a desirable and necessary

step in order to protect the public against discriminatory rates for such service.

"5. That the uniform rates, tolls, charges, rules and regulations for message toll telephone service within this state which have been filed herein and which are the subject of this proceeding are fair, just, reasonable and nondiscriminatory.

"6. That the order entered in this cause on April 3, 1958, all proceedings had and taken in compliance therewith, and all rates, tolls, charges, rules and regulations filed thereunder should be in all things ratified, approved and confirmed, subject to the power of the Commission and to reexamine the matter if the reports required under the said order should show any reason to do so.

"IT IS, THEREFORE, ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that the orders heretofore entered in this cause be and they are hereby in all things ratified, approved and confirmed, subject to the power of the Commission to reexamine the matter if the reports required under the order of April 3, 1958, should show any reason to do so.

"IT IS FURTHER ORDERED that the rates, tolls, charges, rules and regulations filed thereunder and approved by the Commission are reapproved and confirmed and that such rates, tolls, charges, rules and regulations shall continue in effect until further order of the same is required.

"IT IS FURTHER ORDERED that the Plea in Abatement and motion to set aside the order of April 3, 1958, be and the same are hereby overruled."

On February 19, 1959, General Telephone Company of Indiana, Inc., United Telephone Company of Indiana, Inc., and the Eastern Indiana Telephone Company filed a petition in this court to be made parties appellee which was granted. Hereinafter the term appellee shall refer to the above named parties. Other appellees will be referred to as the Public Serv-

ice Commission of Indiana and Illinois Bell Telephone Company.

The order of August 1, 1958, is brought here for judicial review.

Appellees argue that in making the order of April 3, 1958, in this cause the Commission proceeded under §54-412, Burns' 1951 Replacement[1], and that under such section the Commission is not required to give notice or hold a formal hearing; that it was authorized by §54-423, Burns' 1951 Replacement[2], to establish new rates whenever upon investigation it found existing rates to be unjustly discriminatory.

However, §54-412, *supra,* merely provides that a Commission may make a summary investigation, with or without notice. No authority is given to change rates solely on the basis of such investigation. Rather, §54-413, Burns' 1951 Replacement, provides that if, after making such investigation, the Commission is satisfied that sufficient grounds exist to warrant a formal hearing, notice shall be given, and a time and place for hearing and investigation set. It seems clear to us that the Commission in this case was not acting under these sections of the statute. It entered its order on April 3, 1958, (which it later

---

1. "Whenever the Commission shall believe that any rate or charge may be unreasonable or unjustly discriminatory or that any service is inadequate, or can not be obtained, or that an investigation of any matters relating to any public utility should for any reason be made, it may, on its motion, summarily investigate the same, with or without notice."

2. "Whenever, upon an investigation, the commission shall find any rates, tolls, charges, schedules or joint rate or rates, to be unjust, unreasonable, insufficient or unjustly discriminatory, or to be preferential or otherwise in violation of any of the provisions of this act, the commission shall determine, and by order fix just and reasonable rates, tolls, charges, schedules or joint rates to be imposed, observed and followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory or preferential or otherwise in violation of any of the provisions of this act."

purported to confirm on August 1, 1958) without notice or a hearing.

Neither do we believe that §54-423, *supra,* grants authority to the Commission to change rates without notice or hearing. In our opinion, the "investigation" therein referred to is not the summary investigation referred to in §54-412, *supra,* but a formal hearing and investigation held after notice. *We find no indication in any of the statutes that the Commission is authorized to change rates, tolls or charges solely on the basis of its own investigation without notice to anyone.* We think the following words of Judge Bobbitt of our Supreme Court in *Pub. Ser. Comm. et al., etc.* v. *Ind. Bell Tel. Co.* (1956), 235 Ind. 1, 27, 130 N. E. 2d 467, are equally applicable here:

> "In a matter such as the action at bar the Commission cannot act on its own independent information, but must base its findings upon evidence presented in the case, with an opportunity to cross-examine witnesses, to inspect documents or exhibits, and to offer evidence in explanation or rebuttal and nothing can be treated as evidence which has not been introduced as such. *Public Serv. Comm.* v. *Ft. Wayne U. Ry. Co., supra* (1953), 232 Ind. 82, 96, 111 N. E. 2d 719; *Atchison, T. & S. F. Ry. Co.* v. *Commerce Commission* (1929), 335 Ill. 624, 167 N. E. 831, 837; *Ohio Bell Teleph. Co.* v. *Public Utilities Comm.* (1937), 301 U. S. 292, 81 L. Ed. 1093, 1099, 57 S. Ct. 724.

> "The order of the Commission not only must be founded upon facts specially found by the Commission, but such facts must be based upon substantial evidence. *Public Serv. Comm.* v. *Ft. Wayne U. Ry. Co., supra.*

> "The findings must be sufficiently specific to enable the court to review intelligently the Commission's decisions. *Public Serv. Comm.* v. *Ft. Wayne U. Ry. Co., supra."*

The Public Service Commission derives its authority from the statutes and possesses only such power as is conferred by statute. *Boone Co. REMC et al.* v. *Pub. Serv. Com.* (1958), 129 Ind. App. 175, 155 N. E. 2d 149; *Gen. Tel. Co., etc.* v. *Pub. Serv. Comm. of Ind. et al.* (1958), 238 Ind. 646, 150 N. E. 2d 891, 154 N. E. 2d 372; *Chicago & E. I. R. Co.* v. *Public Service Comm.* (1943), 221 Ind. 592, 49 N. E. 2d 341.

Inasmuch as the Commission was without authority to enter the order of April 3, 1958, it could not at a later date confirm the unauthorized order as of the date of such order. As stated by Judge Bierly of this court in *Indiana Telephone Corp.* v. *Public Serv. Com'n of Ind.* (1960), 131 Ind. App. 314, 171 N. E. 2d 111, 124:

> "We find nothing in the statute giving the Commission the power to cancel, or to fix, rates retroactively. The statute provides the Commission with the power to fix rates *for the future* if it finds the rates in effect to be unreasonable or unjust; but we look in vain to find statutory authority for the Commission to fix rates for the past. The Commission has no powers except those conferred by statute. *Chicago & E. I. R. Co.* v. *Public Service Comm.* (1943), 221 Ind. 592, 49 N. E. 2d 341; *New York Central R. Co.* v. *Public Service Comm.* (1922), 191 Ind. 627, 134 N. E. 282."

Appellees state in their argument that since Indiana Bell was organized, intrastate telephone rates have been uniform for all telephone companies in Indiana; that such uniformity has been maintained by adjusting the rates of all telephone companies connecting with Indiana Bell whenever Indiana Bell rates have been revised, either upward or downward; that this has been done as the result of a petition by Indiana Bell alone. Appellees admit that the fact that this

practice has never been challenged "is of course not conclusive as to the validity of the practice", but urge upon us that the practical construction given a statute by public officers is entitled to be considered persuasive and of great weight in cases of doubt. *Zoercher* v. *Indiana Associaited Telephone Corp.* (1937), 211 Ind. 447, 456, 7 N. E. 2d 282; *Groher, Treas.*, v. *Colgate-Palmolive-Peet Co.* (1932), 94 Ind. App. 234, 178 N. E. 242. We find no necessity for resorting to such practical construction here.

Appellees General Telephone Company of Indiana, Inc., United Telephone Company of Indiana, Inc., and the Eastern Indiana Telephone Company argue that the Commission is entitled to prescribe uniform toll rates and that, therefore, the individual situation of any particular company with respect to value of its property and its rate of return is necessarily irrelevant, because the toll rates prescribed for Indiana Bell determine the toll rates of all other companies regardless of the value of their property or their operating income and expenses; that the individual situation of each company with respect to such matters would necessarily preclude uniformity. As appellants themselves point out, the situation of every telephone company in the state with respect to fair value and rate of return is practically certain to be different from that of every other company, and if toll rates depended upon the individual situation of each company the result could well be 185 different toll rate schedules. Appellees further argue that if the application of the Indiana Bell toll rates brings in either an excessive

or an inadequate return the remedy is by lowering or raising the other rates of the individual company.

We are not cited any authority to support the statement that toll rates prescribed for Indiana Bell determine the toll rates of all other companies. We find nothing in the law of Indiana to indicate that because certain rates, tolls and charges would produce a fair return to the largest telephone company, or the smallest, or the average that it can be assumed the same rates, tolls and charges would automatically apply to the other 185 telephone companies.

"The rate making process involves a balancing and weighing of many factors, including general economic and business conditions of the future period and its effect upon the other estimates." *Boone County Rural E. Mem. Corp.* v. *Public Serv. Comm.* (1959), 239 Ind. 525, 159 N. E. 2d 121, 125.

In *Pub. Ser. Comm. et al. etc.* v. *Ind. Bell Tel. Co.* (1956), 235 Ind. 1, 15, 16, 130 N. E. 2d 467, 473, Judge Bobbitt, speaking for our Supreme Court, said:

"Proper rates are those which produce a fair and nonconfiscatory return, and such as will enable the company, under efficient management, to maintain its utility property and service to the public, and provide a reasonable return upon the fair value of its used and useful property. *Public Service Comm.* v. *Indianapolis Rys.* (1948), 225 Ind. 656, 76 N. E. 2d 841; *Columbus Gas, etc. Co.* v. *Public Service Comm.* (1923), 193 Ind. 399, 140 N. E. 538; *McCardle* v. *Indianapolis Water Co.* (1926), 272 U. S. 400, 71 L. Ed. 316, 47 S. Ct. 144. . . .

"Appellants correctly assert that as a general rule the trial court may not weigh the evidence and substitute its discretion for that of the Commission. *Public Service Comm.* v. *City of LaPorte* (1935), 207 Ind. 462, 193 N. E. 668; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399. Neither can the court as a general rule disturb the findings of the Commission where it has conformed to statutory procedural methods and where its decision is supported by substantial evidence. However, an exception to this general rule occurs where, as here, the order is being questioned as confiscatory. *Public Service Comm.* v. *Indianapolis Railways* (1947), 225 Ind. 30, 75 N. E. 2d 434; *Ohio Valley Water Co.* v. *Ben Avon Borough* (1920), 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908; *St. Joseph Stock Yards Co.* v. *United States* (1936), 298 U. S. 38, 80 L. Ed. 1033, 56 S. Ct. 720.

"Hence, where a rate established by the Commission is attacked as confiscatory, the court may, upon its own independent judgment, review that issue as to both law and facts, to the end that constitutional rights may be protected. *Public Service Commission* v. *Indiana Bell Tel. Co.* (1953), 232 Ind. 332, 347, 108 N. E. 2d 889, 112 N. E. 2d 751, *supra; Public Service Comm.* v. *Indianapolis Rys.* (1948), 225 Ind. 656, 76 N. E. 2d 841, *supra; Staten Island(s) Edison Corporation* v. *Maltbie* (1947), 296 N. Y. 374, 73 N. E. 2d 705, 707, 8 A. L. R. 2d 825; *Opinion of the Justices* (1952), 328 Mass. 679, 106 N. E. 2d 259, and cases there cited; *St. Joseph Stock Yards Co.* v. *United States* (1936), 298 U. S. 38, 56 S. Ct. 720, 80 L. Ed. 1033, *supra; Ohio Valley Water Co.* v. *Ben Avon Borough* (1920), 253 U. S. 287, 64 L. Ed. 908, 40 S. Ct. 527, *supra.*"

What may be a fair return for one public utility may be inadequate or excessive for another depending

upon circumstances, locality and risk. *Wabash Valley Elec. Co.* v. *Young* (1933), 287 U. S. 488, 502, 53 S. Ct. 234, 77 L. Ed. 447. Affirming D.C., 1 F. Supp. 106; *United R. & Electric Co.* v. *West* (1930), 280 U. S. 234, 50 S. Ct. 123, 74 L. Ed. 390.

No evidence was submitted concerning property valuation, operating expenses or service at the hearing before the Commission. Proper factors for the determination of rates were not considered. The order being reviewed was not sustained by sufficient evidence and is contrary to law.

The order of the Commission being contrary to law for the reasons above discussed, the same is hereby ordered set aside.

Ax, and Bierly, JJ., concur.

Myers, J., concurs with opinion.

### CONCURRING IN OPINION OF PFAFF, C. J.

MYERS, J.—I concur in the opinion rendered by Judge Pfaff. My objection to Judge Cooper's carefully-considered opinion is that it permits an invalid and unlawful order of the Public Service Commission to remain in full force and effect.

It is practically admitted that the *ex parte* order dated April 3, 1958, authorizing the increase in toll rates of all telephone companies in the state to correspond with the rates granted Indiana Bell, is invalid and contrary to law.

It must be remembered that the order was not based upon a petition or request for a rate increase, and

there was no notice or hearing, all of which is required by statute. The Public Service Commission after investigation took it upon itself to make an *ex parte* order in complete violation of the law. *Pub. Ser. Comm. et al., etc.* v. *Ind. Bell Tel. Co.* (1956), 235 Ind. 1, 27, 130 N. E. 2d 467, 479; *Monon Railroad* v. *Public Service Commission* (1960), 241 Ind. 142, 170 N. E. 2d 441. Such order is thus invalid and void.

The Public Service Commission must have realized this when the motions by the ratepayers of some of the companies affected were filed asking that the order be set aside. It then ordered a formal hearing, which was held on June 12, 1958. However, on August 1, 1958, it entered an order which, by its terms, specifically ratified, confirmed and approved the order of April 3, 1958. Thus, it attempted to approve a void and illegal order. This it could not do. The failure to appeal the April 3rd order does not breathe life into it. This court has the right to review all phases of a Public Service Commission order. It has been held that, in so far as the Public Service Commission is concerned, this court is not an "appeal" court, but a court of review. *Sizemore* v. *Public Service Commission of Indiana* (1960), 240 Ind. 513, 167 N. E. 2d 343. We are not limited to the extent we may go, therefore, in determining whether an administrative agency has acted within the confines of the law.

"The purpose of a judicial review of the actions of an administrative agency is to keep it within its jurisdiction so as not to violate any constitutional rights, to keep the administrator within the statute which guides him and keep him from unreasonable excesses in the exercise of his function, to determine whether substantial rights of parties are invaded, and to insure fairness of administrative action. It is designed to protect against mistaken or arbitrary orders, and its

function is dispassionate and disinterested adjudication unmixed with any concern as to the success of either of the parties. The purpose is consonant with that of the administrative proceeding itself, which is to secure a just result with a minimum of technical requirements." 73 C. J. S., *Public Administrative Bodies and Procedure,* §165, p. 507.

Judge Cooper's opinion states that "appellants resorted to an unusual and unorthodox method of procedure by filing the foregoing petitions to vacate and/or set aside said Ex Parte Order of April 3." He says that there is no provision either in the Rules of the Public Service Commission or in the statutes authorizing such motions, and cites a number of Supreme Court cases supporting the doctrine that:

"Where parties voluntarily adopt and pursue an unorthodox method of procedure, or agree to some unusual manner in which their rights shall be submitted for determination, they may not be heard to complain, on appeal, that proceedings had in conformity thereto were erroneous."

Judge Cooper claims appellants fall within that doctrine. In the first place, appellants do not claim that the procedure followed by them to set aside the order is erroneous. They are primarily claiming that the order entered August 1st is contrary to law. In the second place, the doctrine enunciated by Judge Cooper has no applicability in this type of case. The cases cited as authority all pertain to mandamus, criminal actions, divorce and other matters brought up *in courts of law and equity.* This cause originated before the Public Service Commission which is an administrative tribunal. The proceedings before this tribunal are not judicial in nature, *Indiana Telephone Corp.* v. *Public Serv. Com'n of Ind.* (1960), 131 Ind.

App. 314, 171 N. E. 2d 111, and therefore are never as rigid, standardized or formal as those before the courts. *In re Northwestern Indiana Tel. Co.* (1930), 201 Ind. 667, 171 N. E. 65. In the third place, this was only a method of presenting to the Commission a way in which it could correct its previous invalid order. The statutes provide that, after an order of the Commission has been duly entered, a petition for rehearing may be filed by the losing party (Burns' Ind. Stat., §54-444 [Supp.], 1951 Replacement.) This procedure could not be followed in this case for the obvious reason that there had never been a hearing in the beginning, so there could be no possibility of a rehearing.

In my opinion, the order of August 1, 1958, was not predicated upon specific findings of ultimate facts based upon evidence presented in the hearing held on June 12, 1958, but upon the investigation preceding the illegal order of April 3, 1958. It is therefore void and should be set aside.

## OPINION B

Cooper, J.—This judicial review attempts to attack an order of the Public Service Commission. Although §54-443, Burns' provides, in part:

"... An assignment of errors that the decision, ruling or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered."

the appellants have seen fit to assign twenty-one special specifications of error. In substance, the appellants' attempted attack on the foregoing order brings into question the authority of the commission to (1) prescribe uniform rates for intrastate toll

service; (2) the validity of the finding of the commission as to the necessity for such uniformity; and (3) the legality of the procedure utilized by the commission in this cause in fixing uniform intrastate toll rates.

In an attempt to be brief, I will try to summarize the factual situation in this cause and the law applicable thereto. This, I believe, is a case of first impression.

The record before us reflects that on December 6, 1957, the Indiana Bell Telephone Company filed a petition with the Public Service Commission for authority to modify its schedules of *intrastate* telephone toll rates. It appears from the record that Indiana Bell filed notice as required by §54-415, Burns' upon the filing of said petition and that after notice of hearing was given by the Commission, as required by the statute (§54-115), a public hearing was held on the petition. Thereafter, the Commission entered its Order on April 3, 1958, authorizing Indiana Bell to make the modifications proposed in its schedules of intrastate telephone toll rates. It appears that some of these modifications involved increases in rates and some involved decreases in rates. The aforesaid Order of the Commission as to Indiana Bell is in full force and effect and was not then and is not now in any way contested or appealed from.

The record also reveals that on the same date, to-wit: April 3, 1958, the Public Service Commission entered its Ex Parte Order #27493. I have searched the appellants' brief herein, but have failed to find any place therein where the appellants have set forth said Ex Parte Order, or the substance thereof. Under Rule 2-17 of the Supreme Court, since the Ex Parte Order #27493 is the original order attacked, I believe it was

incumbent upon the appellants under said Rule to set forth said Ex Parte Order in their brief, as it is the general proposition of law that neither the Supreme nor Appellate Court is bound to search the record to determine the questions which the appellants seek to raise. *Coats et ux.* v. *Clanin et ux.* (1958), 128 Ind. App. 195, 147 N. E. 2d 555. Our Supreme Court has said in substance that the failure to substantially comply with this rule waives any alleged error. *Goldstine* v. *State* (1955), 234 Ind. 388, 126 N. E. 2d 581. By searching the record, I was able to determine that said Ex Parte Order in substance authorized all other telephone companies in the state, to-wit: all companies which connect directly or indirectly with Indiana Bell's state-wide toll facilities, to file and establish the same intrastate rates as had been authorized and approved for Indiana Bell in their proceedings so as to achieve uniformity in the intrastate telephone toll rates throughout the state, and as affirmatively found by the Commission in said Order, "to avoid unjust discrimination, practices and unreasonable preferences or advantages between telephone companies, their subscribers and patrons and between various communities and areas in the State of Indiana".

It is apparent from the record that none of these "connecting" telephone companies filed petitions requestiong permission to take this action, and it is apparent that the basis for the April 3, 1958 Order of the Commission was based upon investigation commenced by the Commission on its own motion and upon a finding by it that such action was necessary to avoid unjust discrimination in intrastate toll rates as provided for by §54-412, Burns', which reads as follows:

"Unreasonable Rates Investigation—Whenever the Commission shall believe that any rate or charge may be unreasonable or unjustly discriminatory or that any service is inadequate, or cannot be obtained, or that an investigation of any matters relating to any public utility should for any reason be made, it may, on its motion, summarily investigate the same, with or without notice."

I am of the opinion that said Ex Parte Order was a final reviewable order and the proper procedure for the appellants to have followed at that stage of the proceedings was provided for by §§54-445 and 54-443, Burns', which read as follows:

"54-445. Parties on appeal — Petition to be made party — Appearance — Briefs. — Any person, firm, association, corporation, city, town or public utility may file with the clerk of the court a verified petition to be made a party appellant or appellee, which petition shall allege facts showing that the petitioner has a substantial interest in the determination of the action, and such petitioner shall be made a party appellant or appellee as its interest appears. Any party applicant, intervenor or protestant in the proceedings had before the commission in the matter from which the appeal is taken shall be and have the rights of a party on appeal, upon the filing of a written appearance therein. But no party by his appearance or petition to be made a party shall acquire the right to file a brief, the time for filing of which has expired prior to his appearance."

"54-443. Appeal to Appellate Court from final decision, ruling or order of commission—Transfer to Supreme Court—Assignment of errors.—Any person, firm, association, corporation, city, town or public utility adversely affected by any final decision, ruling, or order of the public service commission of Indiana, may, within thirty (30) days from the date of entry of such decision, ruling, or order, appeal to the Appellate Court of Indiana for errors of law under the

same terms and conditions as govern appeals in ordinary civil actions, except as otherwise herein provided, and with the right in the losing party or parties in the Appellate Court to apply to the Supreme Court for a petition to transfer the cause to said Supreme Court as in other cases. An assignment of errors that the decision, ruling or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered."

The record reveals that on April 15, 1958, June 3, 1958 and on June 9, 1958, certain residents of Indiana, who were patrons or subscribers filed three motions to set aside the order of the Commission hereinafter referred to. All averments contained therein are substantially the same except as to the indentity of location and individuals, which, omitting the formal parts and signatures, read as follows:

"1. They are residents of the territory served by the Illinois Bell Telephone Company, a public utility operating in the State of Indiana and under the jurisdiction of the Public Service Commission of Indiana.

"2. On April 3, 1958, the Public Service Commission of Indiana approved an order in Ex Parte No. 27660, wherein said Illinois Bell Telephone Company and numerous othere telephone utilities were granted an increase in rates and charges applicable to intrastate message toll service in the State of Indiana.

"3. That said order was entered without formal petition on behalf of any affected utilities and without any statutory or legal proceedings being commenced or pending before the Public Service Commission of Indiana.

"4. Said order was issued without notice to the patrons, customers of any of the affected utilities or to the general public and said patrons,

customers and general public were deprived of the right of hearing.

"5. Said order was issued without hearing, determination or finding of value of property involved or rate of return thereon or of service available to the patrons and customers of the utilities affected.

"6. That the order of said Public Service Commission of Indiana approved April 3, 1958 is improper, illegal and deprives the patrons and customers of said utility of property and rights without due process of law.

"WHEREFORE, the undersigned persons on their own behalf and on behalf of other persons similarly situated move that said order of April 3, 1958 be set aside and declared null and void."

It appears from the record that the appellants resorted to an unusual and unorthodox method of procedure by filing the foregoing petitions to vacate and/or set aside said Ex Parte Order of April 3.

In reviewing the acts relating to the public service commission, I can find no statutory provision or authority providing for petitions or motions to vacate and/or set aside, nor do I find any such provisions in the rules of the Public Service Commission. This places the appellants directly under the doctrine which has been enunciated several times by our Supreme Court, wherein the court has stated:

"Where parties voluntarily adopt and pursue an unorthodox method of procedure, or agree to some unusual manner in which their rights shall be submitted for determination, they may not be heard to complain, on appeal, that proceedings had in conformity thereto were erroneous. *State ex rel. Cline* v. *Schricker* (1950), 228 Ind. 41, 88 N. E. 2d 746, 89 N. E. 2d 547; *Pokraka et al.* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669; *State ex rel. Reiman* v. *Kimmell* (1937), 212 Ind. 639, 10 N. E. 2d 911." *McKay* v. *Carstens* (1952), 231 Ind. 252, 256, 108 N. E. 2d 249; see

also *State ex rel. Randall et al.* v. *Long, Spl. J., etc. et al.* (1957), 237 Ind. 389, 146 N. E. 2d 243; *Flowers* v. *State* (1956), 236 Ind. 151, 139 N. E. 2d 185.

It is also elementary that when all of the appellants in this proceeding were permitted to intervene and file the aforesaid motions, they did such as individuals and also on behalf of all others similarly situated, and, therefore, became parties to the proceedings for all purposes until final judgment. See *State ex rel. Pub. Serv. Comm.* v. *Boone C. C., etc.* (1956), 236 Ind. 202, 138 N. E. 2d 4; *Boone County REMC* v. *Pub. Serv. Comm. of Indiana* (1959), 239 Ind. 525, 533, 159 N. E. 2d 121.

In passing on the aforesaid motion, the record reveals that the Public Service Commission entered the following order:

"The Commission, having heretofore on its own motion conducted a summary investigation of intrastate message toll rates within the State of Indiana, and as a result of such investigation, and in order to prevent improper or unlawful discrimination, authorized telephone companies in Indiana furnishing intrastate toll services in any way connected with the toll facilities of Indiana Bell Telephone Company to file and make effective certain uniform and conforming rates, said procedures and authorizations having been a long and well established practice of the Commission for the fixing of such uniform intrastate toll rates;

"The Commission, now upon further consideration, is satisfied that sufficient grounds exist to warrant a formal hearing of the matters so investigated.

"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that a formal hearing be held with respect to the matters so investigated after proper notice to the

utilities interested and to such other interested persons as the Commission shall deem necessary.

"IT IS FURTHER ORDERED that the mailing of a copy of this order to the utilities interested and to such other persons as the Commission shall deem necessary shall constitute the statement notifying such utilities and other interested persons of the matters under investigation."

Based upon the foregoing order, the record reflects that the Public Service Commission gave notice to the interested utilities, and the appellants herein, also published notice of the hearing in thirty-one counties of the state.

The action on the appellants' part, by intervening, considered together with the published notice of the hearing in the thirty-one counties in the state I believe was sufficient to formally invoke the jurisdiction of the Public Service Commission over all the toll-rate payers, subscribers and patrons within the state. It is the general rule of law that where notice for an increase of utility rates has been given by publication, as required by the statute, every affected patron or rate payer is bound by the proceedings after such notice, whether or not he intervenes or participates. See *State ex rel. Pub. Serv. Comm.* v. *Boone C. C., etc., supra.*

It has not been pointed out to us by the appellants, either by the record or in their briefs, nor has any showing been made that I can find where any person, or persons were not properly notified by publication or by personal appearance who was adversely affected by the decision or order, and, as the result thereof, had not received due process of law, as charged by the appellants.

The foregoing answers any question of the legality of the procedure utilized by the Commission in securing jurisdiction over the rate payers, subscribers or patrons.

Next, I will attempt to answer the appellants' attack on the authority of the Commission to prescribe uniform rates for intrastate toll service.

The record reveals that at the hearing held on June 12, 1958, pursuant to the foregoing entry and the published notice and the general appearance of the appellants herein, the Illinois Bell Telephone Company and other witnesses appeared and offered evidence which was received in the record. For the most part this evidence relates to the showing of the necessity for the uniformity in intrastate toll rates throughout the state. It appears from the record that the protestants to the order offered no evidence but merely objected to the evidence offered on behalf of the connecting companies. Upon the completion of the hearing, the Public Service Commission on August 1, 1958, made the following findings of fact and order based thereon:

"1. That it has jurisdiction of the subject matter of this proceeding and all necessary parties thereto.

"2. That due notice of the hearing of this cause was given and published as set forth herein.

"3. That any lack of uniformity in message toll telephone rates for calls within this state would result in discrimination and confusion, injury to the service, unnecessary expense to all concerned, customer dissatisfaction, and interference with the dialing of such calls by customers, and would be of no advantage to the public.

"4. That the fixing of uniform rates for all telephone companies in this state for message toll telephone service within this state in a sin-

gle proceeding is a desirable and necessary step in order to protect the public against discriminatory rates for such service.

"5. That the uniform rates, tolls, charges, rules and regulations for message toll telephone service within this state which have been filed herein and which are the subject of this proceeding are fair, just, reasonable and nondiscriminatory.

"6. That the order entered in this cause on April 3, 1958, all proceedings had and taken in compliance therewith, and all rates, tolls, charges, rules and regulations filed thereunder should be in all things ratified, approved and confirmed, subject to the power of the Commission to re-examine the matter if the reports required under the said order should show any reason to do so.

"IT IS, THEREFORE, ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that the orders heretofore entered in this cause be and they are hereby in all things ratified, approved and confirmed, subject to the power of the Commission to re-examine the matter if the reports required under the order of April 3, 1958, should show any reason to do so.

"IT IS FURTHER ORDERED that the rates, tolls, charges, rules and regulations filed thereunder and approved by the Commission are re-approved and confirmed and that such rates, tolls, charges, rules and regulations shall continue in effect until further order of the same is required.

"IT IS FURTHER ORDERED that the Plea in Abatement and motion to set aside the order of April 3, 1958, be and the same are hereby overruled."

It is a well-known fact that Indiana Bell owns and operates the basic intrastate telephone toll network and the facilities therefor in this state. A great many toll calls are originated, carried and terminated wholly on the Bell network, but, in many other instances, toll calls are carried, partly on the Bell net-

work and facilities, and partly on the network and facilities of connecting companies and finally terminated on the network or facilities owned by a connecting company. The reverse of this is also true. We judicially know from other cases which have been before us that where more than one company is involved in a long-distance call a revenue derived therefrom is divided between, or among them under a rate formulae contained in traffic agreements on file with and approved by the Public Service Commission of Indiana. Would not toll rates be discriminatory in a condition which would justify charging an Indiana Bell patron more or less for a long-distance call from Indianapolis to Fort Wayne, for example, than charging a patron on the General Telephone Company for a long-distance call from Fort Wayne to Indianapolis? To me, the evidence in the record clearly demonstrates that a long-distance toll call between two given points has substantially the same value and involves the same service, whether the call originates in an exchange owned by the Indiana Bell or in an exchange owned by a connecting telephone company. It is elementary that without uniform telephone toll rates throughout the state, unlawful discrimination in such rates would result, regardless of property valuation and/or operating expenses, they cannot and should not be factors in the determination of intrastate toll rates involving 185 telephone companies, many of which are small co-ops.

Generally, I believe that Public Service Commissions have the power themselves to initiate inquiry or when an authority is invoked, to control the range of investigation in ascertaining what are the requirements of public interest in relation to the needs of the citizens of this state in the enjoyment of public fa-

cilities of communications and all other essential public services under our present statutes, (see §54-412, Burns', *supra*) and such was the true intent of the legislature in enacting such provisions, when ". . . the legislative intention, as collected from an examination of the whole, as well as the separate parts, of a statute, will prevail over the literal import of particular terms, and will control the strict letter of the statute where an adherence to such strict letter would lead to injustice, to absurdity, or to contradictory provisions." *Stout* v. *The Board of Commissioners of Grant County* (1886), 107 Ind. 343, 347, 8 N. E. 222.

It is clear from §§54-408, 54-412, 54-413, 54-414, 54-415 and 54-423, Burns', that telephone rates may be changed by the Commission on a complaint filed by a utility or against a utility, or as a result of an investigation brought about by the Commission on its own motion. It is specifically provided in the statutory references, above, that discriminatory rates are a matter for commission investigation, and that upon a finding that any rates are unjustly discriminatory, the commission shall fix just and reasonable rates. There can be no question, therefore, that the commission did and does possess jurisdiction to prescribe and fix uniform intrastate toll rates as would be just and reasonable, as provided for by the statute, upon a proper finding that unjust discrimination in rates would otherwise result, and provided, of course, that the commission otherwise proceeded properly, to achieve such uniformity.

It has long been recognized that the authority to fix rates for public utilities rests in the legislature, (*City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 47 N. E. 525, 51 N. E. 80) the administration of such regulations, under such laws as the legislature in its

wisdom adopts, belongs to the administrative department. *Pub. Ser. Com.* v. *Indpls. Railways* (1947), 225 Ind. 30, 72 N. E. 2d 434. *The judicial branch of the government may only interfere whenever a judicial question is involved, as for instance, in cases of fraudulent, arbitrary, or capricious action by an administrative body. Peden et al.* v. *Board of Review of Cass County* (1935), 208 Ind. 215, 195 N. E. 87; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399, and "We have no power or authority to substitute our personal judgment for what we might think is fair or reasonable in lieu of the administrative judgment of the Public Service Commission. *Pub. Serv. Comm. et al.* v. *City of Indianapolis* (1956), 235 Ind. 70, 131 N. E. 2d 308." *Boone County REMC* v. *Pub. Serv. Comm. of Indiana, supra,* at p. 532.

In reviewing Public Utility Reports, it is apparent that other state regulatory commissions have reached the conclusion that intrastate toll rates must be uniform. See: *Re Inter Mountain Telephone Company,* (Tenn. P. S. C. 1957), 19 PUR 3d 109; *Re Peninsular Telephone Co.,* (Fla. Comm. 1956), 17 PUR 3d 109; *Re Intrastate Telephone Toll Rates,* (N. C. Comm. 1946), 67 PUR (NS) 63; *Re Rochester Telephone Corp.* (Case 13489) (N. Y. P. S. C. 1949), digested in PUR Dig. Vol. F., page 184, *Re Prospect G. & B. B. Telephone Co.,* (Case 2-U-3615) (Wis. P. S. C. 1951), digested in PUR Dig. Vol. F., page 184; *Re Ogdensburg Telephone Co.,* (Wis. P. S. C. 1952), 95 PUR (NS) 15; *Re Pacific Telephone & Telegraph Company* (Calif. P. S. C. 1954), 5 PUR 3d 396, 433, 537.

Of course, the necessity for uniformity in intrastate toll rates does not mean, nor by such is it intended, that any communications company must be permitted to earn an excessive return because in-

creases in toll rates are necessary to prevent discrimination. Under our statutes, as I have heretofore pointed out, the Public Service Commission has a continuing power to adjust the rates and charges for local or toll telephone services to prevent or remedy excessive returns without disturbing uniform toll rates. Sec. 54-112, Burns'; see, also, *Intrastate Telephone Toll Rates* (N. C. Comm. 1946), 67 PUR (NS) 63.

Based upon the uncontradicted evidence in the record in this cause, it is my conclusion, under the foregoing cited cases that the finding of the Commission that uniformity in the intrastate toll telephone rates is a necessity and is amply supported by the evidence and the law applicable thereto. We are, therefore, confronted with the doctrine as announced by our Supreme Court in the case of *Boone County REMC* v. *Pub. Serv. Comm. of Indiana, supra,* at p. 532, wherein our Supreme Court stated:

> "We start with the general principle that so long as there is any substantial evidence to support the rates as fixed by the Commission as reasonable, the judicial branch of the government will not interfere with such legislative function. We have no power or authority to subsitute our personal judgment for what we might think is fair or reasonable in lieu of the administrative judgment of the Public Service Commission. *Pub. Serv. Comm. et al. v. City of Indianapolis* (1956), 235 Ind. 70, 131 N. E. 2d 308."

In conclusion, it has been argued that the foregoing findings of fact are conclusions of law rather than findings of ultimate fact. I appreciate the apparent infirmities in the foregoing findings, and realize it is difficult for a lay administrative board to determine whether a finding of fact is a mere statement of evidence, a finding of fact or a conclusion of law. However, the real test on review is: " 'The Public Serv-

ice Commission should find the ultimate facts specifically and not generally. *The findings of fact must be specific enough to enable the court to review intelligently the Commission's decision.'* " (Our emphasis) See: *Gen. Tel. Co., etc.* v. *Pub. Serv. Comm. of Ind. et al.* (1958), 238 Ind. 646, 653, 150 N. E. 2d 891, 154 N. E. 2d 372; *American Transp. Co.* v. *Pub. Serv. Comm. of Ind.* (1958), 239 Ind. 453, 460, 154 N. E. 2d 512, and cases cited therein.

Since the foregoing findings meet this test, the Order should be affirmed.

Gonas, J.; Kelley, J.; Ryan, P. J., concur.

## ON PETITION FOR REHEARING

PFAFF, J.—This case (see 177 N. E. 2d 743) again comes before us on a petition for rehearing.

After several conferences of the court sitting in banc, the following action was taken:

Judges Ax, Bierly, Myers and Pfaff voted to grant the rehearing. Judges Cooper, Gonas, Kelley and Ryan voted to deny the same.

The decision having been affirmed by a divided court, we now have no alternative but to deny the petition for rehearing.

Petition denied.

NOTE.—Reported in 177 N. E. 2d 743. Rehearing denied 178 N. E. 2d 557. Transfer denied 180 N. E. 2d 232.