**PENN–DIXIE STEEL CORPORATION, a Delaware Corporation, Appellant (Intervenor Below),**

**City of Rushville, Indiana, a Municipal Corporation in Indiana, Appellant (Intervenor Below),**

v.

**PUBLIC SERVICE COMPANY OF INDIANA, INC., an Indiana Corporation, Appellee (Petitioner Below),**

**Public Service Commission of Indiana, Appellee,**

**Frank J. Biddinger, Public Counselor of the State of Indiana, Appellee,**

**General Motors Corporation, Appellee (Intervenor Below),**

**Anaconda Company, Appellee (Intervenor Below).**

**Nos. 2–1075A309, 2–1275A360.**

Court of Appeals of Indiana, Fourth District.

Sept. 30, 1980.
Rehearing Denied Oct. 23, 1980.

---

Paul Hirsch and Robert W. Bridwell, Haymaker, Hirsch & Fink, Indianapolis, David A. Malson, Rushville, for appellants.

Charles W. Campbell, Greg K. Kimberlin, Plainfield, Robert D. Morgan and Michael B. Cracraft, Smith, Morgan & Ryan, Indianapolis, for appellees.

CHIPMAN, Judge.

This appeal is a consolidation of two separate causes filed by Penn–Dixie Steel Corporation (Penn–Dixie) and the City of Rushville (Rushville) seeking review of a rate increase granted Public Service Company of Indiana, Inc. (PSI) by the Public Service Commission (PSC). During the briefing stage of its appeal, Penn–Dixie entered into a settlement agreement with PSI. Rushville is the sole appellant left in this case. It was granted intervenor status in the rate case and now appeals the PSC's final order. We affirm.

Rushville has raised the following issue:

Whether the PSC complied with the notice and hearing procedures required by law in reaching its final order.

## FACTS

On May 16, 1967, PSI purchased the municipal electric system owned by Rushville for two million dollars. At that time, PSI's rates were higher than the rates charged by the municipal system. PSI, by a provision in the sales contract, agreed to supply electricity to the former municipal customers at the municipal system's then charged rate (old rate). This old rate was available only to the customers of the municipal system as of the date of sale and only so long as the customer continued to receive the electric service at the same premises. The sales contract was approved by the Federal Power Commission and PSI's rates for Rushville were filed with and approved by the PSC.

PSI filed a petition for a rate increase with the PSC on December 6, 1974. On January 3, 1975, Rushville filed a petition to intervene which was granted by the PSC. Notice of the prehearing conference on PSI's petition was published in two Rushville newspapers on January 17. This conference was attended by Rushville's attorney. On May 15, 1975, PSI filed its proposed rate schedule which did not raise the rates of Rushville's old rate customers.

Notice of PSI's proposed rate increase was published in two Rushville newspapers. It is set out below.

LEGAL NOTICE OF

PUBLIC HEARING

PUBLIC SERVICE COMMISSION OF INDIANA DOCKET NO. 33932

PETITION OF PUBLIC SERVICE COMPANY OF INDIANA, INC. FOR AUTHORITY TO INCREASE ITS RATES AND CHARGES FOR ELECTRIC SERVICE, FOR APPROVAL OF NEW SCHEDULES OF RATES AND CHARGES AND OF RULES AND REGULATIONS APPLICABLE TO SUCH RATES AND CHARGES, AND

FOR APPROVAL OF REVISED PROPER AND ADEQUATE RATES OF DEPRECIATION OF THE SEVERAL CLASSES OF ITS UTILITY PROPERTY.

Notice is hereby given that the Public Service Commission of Indiana will conduct a public hearing in this cause in the Rooms of the Commission, 907 State Office Building, Indianapolis Indiana, at 9:00 a. m., EST, on Monday, June 23, 1975.

Public participation is requested.

PUBLIC SERVICE COMMISSION
OF INDIANA
By: LARRY J. WALLACE
Chairman

Indianapolis, Indiana; May 16, 1975

At the rate hearings, PSI's witness, Donald Gimble, testified on direct examination that PSI was not seeking a rate increase for old rate Rushville customers since it had agreed not to in its purchase contract. But in his opinion, since the old rate customers were receiving the same service as those now paying higher rates, this dual rate for the same service was unfair, unjust, and unreasonable to those who were paying the higher rate. On cross–examination by Penn–Dixie, another intervenor, Gimble testified, in his opinion, the customers whose rates were not frozen were subsidizing those whose rates were frozen in the amount of approximately $250,000.

Although it had been granted intervenor status, Rushville did not attend nor participate in these hearings. The hearings were concluded on August 6, 1975, and the PSC issued its order on October 6.

In its order, the PSC summarized the evidence presented by Gimbel concerning the frozen rates. In its Findings of Facts, the PSC made the following findings:

"8. With regard to Petitioner's agreements with certain municipal electric systems to freeze rates to certain customers, we find that to allow customers under these frozen rates to continue receiving service at rates considerably lower than customers receiving the same type of service is unreasonable and unjustly discrim-

inatory and Petitioner's contract with these municipalities cannot be permitted to extend this unreasonable and unjustly discriminatory treatment in perpetuity. It would be unconscionable for us to permit 2,000 of Petitioner's 484,000 customers to continue to receive electric service at rates that are so low as to be patently unreasonable and unjustly discriminatory. Our Supreme Court has held that it is not possible for a utility by its contracts to take away, deprive or limit this Commission's statutory power to fix rates and charges. *Boone County REMC v. Pub. Serv. Com.*, 239 Ind. 525 [, 159 N.E.2d 121] (1959); *State ex rel. Pub. Serv. Com. v. Boone Cir. Court*, 236 Ind. 202 [, 138 N.E.2d 4] (1956); and *Pub. Serv. Com. v. Girton*, 189 Ind. 627 [, 128 N.E. 690] (1920). These optional rates should be withdrawn by Petitioner and the customers served under these optional rates should be served under applicable rate schedules to be filed by Petitioner pursuant to this order."

Rushville petitioned the PSC for a rehearing after the order was issued but the petition was denied. Rushville then filed this appeal.

## STATUTORY COMPLIANCE WITH NOTICE AND HEARING REQUIREMENTS

On appeal Rushville does not challenge the authority of the PSC to disregard a contract between a public utility and its customers. *Public Service Commission v. Girton*, (1920) 189 Ind. 627, 128 N.E. 690 held it is not possible for a private citizen, by his contract with a public utility, to limit the power of the state to regulate rates charged by the utility.

Rushville does challenge the propriety of paragraph 8 of the Findings of Fact set out above. It argues the PSC made a finding of fact not based on evidence in the record on an issue not properly before it. In its brief, Rushville explains it did not attend nor participate in the rate increase hearings because PSI had not requested a rate increase for Rushville's old rate customers,

and therefore the issue of a rate increase for the old rate customers was not properly before the PSC. In Rushville's eyes, the PSC made its own investigation, which is authorized by IC 8–1–2–58,[1] but it did not comply with the statutory notice and hearing requirements[2] when it delivered its order based upon its investigation. We disagree that the PSC made its decision based upon its own investigation.

"[T]he PSC's orders must be based upon substantial evidence in the record and be specific enough to enable this court to intelligently review the PSC's decision." *United Telephone Company of Indiana, Inc. v. Public Service Commission*, (1980) Ind.App., 402 N.E.2d 1013. Rushville argues there was not substantial evidence in the record to find the old rates were to last in perpetuity, and that the old rates were unconscionable and discriminatory. It argues the old rates are automatically terminated when an old rate customer moves or dies and therefore the old rates cannot last in perpetuity. A close reading of paragraph 8 reveals the PSC did not find the old rates will continue in perpetuity. It merely states they cannot be permitted to continue into perpetuity. The PSC found the rates to be unreasonable

and unjustly discriminatory based on the difference in the rates charged, not on the length of time the difference was to remain in effect.[3]

The testimony of Gimble clearly provided substantial evidence in the record from which the PSC could find the old rates were unconscionable and unjustly discriminatory. His testimony noted old rate users were charged less for electric service than all other similarly situated customers. This is clearly discriminatory and in the PSC's view unconscionable. The evidence supports their findings.

Rushville continues its argument by citing *Sizemore v. Public Service Commission*, (1961) 133 Ind.App. 51, 177 N.E.2d 743[4] for the proposition that the PSC cannot change rates on the basis of its own investigation without notice to anyone. It also cites *Public Service Commission v. Indiana Bell Telephone Co.*, (1955) 235 Ind. 1, 130 N.E.2d 467 for the proposition that the PSC cannot act upon its own investigation but must base its findings upon evidence presented in the case and provide parties an opportunity to present evidence and cross–examine witnesses. While we agree these propositions

1. "8–1–2–58 Unreasonable rates—Investigation.—Whenever the commission shall believe that any rate or charge may be unreasonable or unjustly discriminatory or that any service is inadequate, or cannot be obtained, or that an investigation of any matters relating to any public utility should for any reason be made, it may, on its motion, summarily investigate the same, with or without notice."

2. Before the PSC can make changes in a public utility's rates pursuant to its own investigation, it must first comply with the notice requirements of IC 8–1–2–60 and with the hearing requirements of IC 8–1–2–59.

   "8–1–2–59 Hearing ordered—Statement—Notice.—If, after making such investigation, the commission becomes satisfied that sufficient grounds exist to warrant a formal hearing being ordered as to the matters so investigated, it shall furnish such public utility interested a statement notifying the public utility of the matters under investigation. Ten [10] days after such notice has been given, the commission may proceed to set a time and place for a hearing and an investigation, as hereinbefore provided."

"8–1–2–60 Notice of hearing—Practice.—Notice of the time and place for such hearing shall be given to the public utility and to such other interested person as the commission shall deem necessary, as provided in section fifty–nine [8–1–2–56], and thereafter proceedings shall be had and conducted in reference to the matter investigated in like manner as though complaint had been filed with the commission relative to the matter investigated, and the same order or orders may be made in reference thereto as if such investigation had been made on complaint."

3. The record reveals 257 small commercial and industrial PSI customers in Rushville were being charged the old rate. In this era of perpetual life corporations, the potential for some of these old rates to continue into perpetuity did exist.

4. The entire cite on this case, which followed a rather unique appellate route is (1960) 240 Ind. 513, 167 N.E.2d 343, *on remand* (1961) 133 Ind.App. 51, 177 N.E.2d 743, *reh. den.* (1961) 133 Ind.App. 51, 178 N.E.2d 557, *pet. dismissed* (1962) 242 Ind. 498, 180 N.E.2d 232.

are correct statements of the law, we disagree with Rushville's assertion they were not followed by the PSC.

First, as noted above, the PSC's finding was based on evidence presented at the hearing. Secondly, Rushville, who was granted intervenor status in this case, was provided ample opportunity to cross–examine witnesses and present evidence, but it chose not to do so. Lastly, we find Rushville was given sufficient notice of a potential rate increase by the PSC's notice published in two of its city's newspapers.

A situation quite similar to the one involved in this case was the basis of the appeal in *State v. Boone Circuit Court*, (1956) 236 Ind. 202, 138 N.E.2d 4, *reh. den.* (1957) 236 Ind. 202, 139 N.E.2d 552. In that case PSI had filed a petition for a rate increase with the PSC. PSI's proposed new rates did not request a rate increase for the Boone County Rural Electric Membership Corporation (REMC), but the PSC's final order increased the rates of all of PSI's customers. In finding the PSC acted within its authority and the REMC had received statutorily required notice the Supreme Court, in denying the petition for rehearing, stated:

> "We fail to find, likewise, that the statute makes any distinction in rate proceedings as to the method of giving notice with respect to the character of the ratepayers or customers. The contracts between the utility charging the rates and furnishing the power and the utility purchasing, transmitting and re–distributing the power, are subject to the continuing jurisdiction of the commission and its regulatory powers. The fact that the schedule of the originally proposed rate increase, did not contain any proposed increase for the Boone County Rural Electric Membership Corporation, does not alter the situation, as we stated in our original opinion. The Public Service Company of Indiana, Inc., sought a net increase in the total rates, and it was unnecessary to specify any particular ratepayer in the notices. The Boone County REMC and all other ratepayers

after notice, as provided by the statute, were charged with the knowledge of the proceedings to fix and alter the rates before the Commission. If the utility's existing rates were found to be confiscatory [inadequate] the Commission was not bound to make an increase of rates on any basis proposed by the company herein but might reconstruct its own schedule of rates."

Likewise in this case, the PSC was not bound by either the sales contract between PSI and Rushville or PSI's proposed rate increase. Statutory notice was complied with in this case and that put Rushville on notice that the PSC could reconstruct PSI's rate schedule if it found PSI's then effective rates inadequate based on substantial evidence in the record.

The order of the PSC is affirmed.

YOUNG, P. J., and MILLER, J., concur.