CHARLES A. SHOUP, Appellant, v. TANNER-BUICK COMPANY, Respondent.

In the Kansas City Court of Appeals, November 6, 1922.

1. **CONTRACTS: Misrepresentations: Promise to do Something in Future not Misrepresentation of Existing Fact, but Representations Relating not so Much to Future Event as to Existing Facts, on Which an Expectation of that Event May be Founded, are not to be Regarded as Merely Promissory.** It is well settled in this State that a promise to do something in the future is not a misrepresentation of an existing fact, even though there is no intention to fulfill the promise at the time it was made, but where representations made do not relate so much to a future event as to ex'sting facts, conditions or arrangements on which an expectation of that event may be founded, are not to be regarded as merely promissory.

2. **PLEADING: False Representations: Petition Held not to Allege False Representations as to Existing Business Condition and Arrangement, not to Reduce Price of Automobile.** In an action for the cancellation of a contract for the sale of an automobile and to recover purchase price, a petition alleging that defendant agreed and represented that it and the manufacturer would protect plaintiff against any decline in price prior to certain date, that in the event of a decline in price they would refund plaintiff amount thereof, that it was unnecessary to incorporate said protecting clause in the contract, that in making such statement defendant knew that it did not represent the manufacturer and that said statements were made without any intention of protecting plaintiff against decline in price, but for the fraudulent purpose and design of deceiving plaintiff and of procuring his signature to contract, *held* that the petition did not allege false representations in relation to any existing business condition and arrangement not to reduce the price of the automobile prior to specified date.

3. **MISREPRESENATIONS: Fraud: Evidence Held Insufficient to Show That There Was Any Misrepresentation as to Any Existing Fact in Sale of Automobile.** In action for cancellation of contract of sale and to recover purchase price of automobile; evidence *held* insufficient to show that there was any misrepresentation as to existing facts, or of conditions or arrangements that did not relate to the future.

4. ———: ———: **Statement by Defendant, in Inducing Plaintiff to Purchase Automobile, That There Would be no Decline in Price Thereof During Selling Season, Held not a Material Representation of an Existing Fact.** A statement by defendant, in inducing plaintiff to purchase an automobile, that there would be no decline in price until the end of the selling season, *held* not a material representation of an existing business condition or arrangement for the reason that the statement itself merely expressed an intention not to change price until specified time, which intention related to the future and was subject to change at any time.

5. ———: ———: **Collateral Representation: False Representation as to Authority of Agent Being Collateral to Representation, Inducing Plaintiff to Enter into Contract, Held Insufficient to Support Action to Recover Purchase Price.** Where defendant, in inducing plaintiff to purchase an automobile, represented that it had authority to act for manufacturer, such representation was not sufficient to support an action to recover purchase price, the representation being merely collateral to a representation inducing plaintiff to enter into the contract, which representation was that plaintiff would be paid the difference between the value of the automobile on the day of its purchase and the cost on a future date should there be a decline in the selling price.

6. ———: ———: **Deceit: Rescission: False Representations Made to Buyer of Automobile That he Would be Protected from Decline in Price, Held not Sufficient on Which to Base an Action for Fraud, Deceit or Rescission.** Where defendant, in order to induce plaintiff to enter into contract for purchase of an automobile made representations relative to what defendant and the manufacturer would do in the event of a decline in the selling price, *held* that even if such representations were made without any intention on the part of defendant to carry them out, such representations were not sufficient on which to base an action for fraud and deceit, or an action for rescission.

Appeal from the Circuit Court of Buchanan County.—
*Hon. Thos. B. Allen,* Judge.

AFFIRMED.
211 M. A.—31

*John E. Dolman* for appellant.

*Strop & Mayer* for respondent.

BLAND, J.—This is an action for the cancellation of a contract for the sale of an automobile and to recover its purchase price. The court found the issues for defendant and dismissed plaintiff's bill. Plaintiff has appealed.

The following are the allegations of the petition in reference to the false and fraudulent representations claimed to have been made by defendant to plaintiff:

"Plaintiff further states that prior to the said 10th day of March, 1921, said defendant repeatedly solicited said plaintiff to purchase said car, but said plaintiff declined, for the reason that in his opinion the price of such cars would decline in line with every other commodity and that he would wait until fall before purchasing any car. That thereupon said defendant agreed that if plaintiff would purchase a car at that time that it would protect him against any decline during the selling season. Thereupon plaintiff asked when the selling season expired and was informed by said defendant that said season expires July 1st. Thereupon plaintiff declined to purchase said car at said time unless defendant would protect him against any decline in price until August 1, 1921. Thereupon said defendant agreed to protect said plaintiff against any decline in price until August 1, 1921. Thereafter said defendant went to the residence of said plaintiff for the purpose of closing said deal, and there presented said plaintiff with a printed form of contract of sale, a copy of which is hereto attached, marked Exhibit "A," and made a part hereof. Thereupon said plaintiff declined to sign said contract unless defendant would incorporate therein the terms of their said agreement, to-wit, that plaintiff should be protected against any decline in the price of said cars until August 1, 1921. Thereupon said defendant falsely and fraudulently and for the purpose of fraudulently ob-

taining plaintiff's signature thereto, represented to plaintiff and assured to him that it was entirely unnecessary to incorporate said protecting clause in said contract, and falsely and fraudulently stated and represented that if there was a decline in price before said August 1, 1921, the Buick Motor Company would immediately refund the amount of any such decline. That in making said statement said defendant well knew that it did not represent the Buick Motor Company and had no authority to speak for it, all of which was unknown to plaintiff, but that said defendant falsely and fraudulently made said statement without any intention of protecting said plaintiff against any decline in price as aforesaid, but for the fraudulent purpose and design of deceiving said plaintiff and of procuring said plaintiff's signature to said contract by said false and fraudulent statements and representations. . . .

"Plaintiff further states that he was induced to purchase said car at said time and to sign said contract solely by reason of said false and fraudulent representations of said defendant, and that he would not have purchased said car at said time nor have signed said contract except for such false and fraudulent representations made to him at said time by said defendant that said defendant and said Buick Motor Company would protect him against any decline in the price of cars until August 1, 1921, as aforesaid. That plaintiff on August 6, 1921, duly tendered said car to said defendant as aforesaid, and still stands ready and willing and is able to deliver said car to said defendant."

The facts show that plaintiff, who is engaged in the mercantile business in St. Joseph, Missouri, on March 9, 1921, purchased of defendant a new seven passenger Buick automobile. At that time plaintiff was the owner of a car of an older model and had no intention of buying a new one but one of defendant's agents called at his place of business and solicited plaintiff to buy a new automobile. Plaintiff told the agent that he was not anxious to buy a car at that time and that he had made

up his mind not to buy until fall and that if he bought then he "would have to have special inducements as to terms and prices in order to consumate any deal earlier than fall, because our line was declining; all lines of goods were declining and business was very slow." The agent admitted that he was not selling very many machines. Plaintiff's son told the agent, "all commodities in practically every line of merchandise were declining. Automobiles had been the only one that had not declined and that it appeared to me to be very foolish to advise father to buy a car at the peak price." The agent showed plaintiff a letter addressed to defendant from the Buick Motor Company, the manufacturer of the automobile, which letter stated that there would be no decline in the price of automobiles during the selling season. In answer to plaintiff's inquiry as to what was the end of the selling season, the agent replied, "July 1st." Thereupon plaintiff told the agent that July 1st would not answer his purpose, that he wanted to be protected against decline until August 1st, which he (the agent) agreed and consented to and said that part was satisfactory; the agent said "that the Buick Motor Company would send a check without any request, that I would not even have to ask for it if there was any decline, The Buick Motor Company would send a check;" "that I need not give myself any concern whatever about that." Plaintiff testified that it was upon these terms the deal was closed.

Thereafter the agent exhibited to plaintiff a contract covering the sale of the automobile, which contained the following clause: "It is mutually understood that there are no terms or conditions of any kind affecting the sale or warranty of the above goods not contained herein." Plaintiff called the agent's attention to this clause and asked "to have our guaranty inserted" and again told the agent why he was not anxious to buy a car at that time. The agent assured plaintiff that the contract was merely a Buick form and that if he signed the contract, "we will give you the benefit of any decline in price,"

and again exhibited a letter from the manufacturers and stated that the representations therein contained were better than any writing the agent could give plaintiff and that if he would sign the contract the Buick Motor Company would send him the amount of any reduction in price of cars before August 1st. Relying upon these representations plaintiff signed the contract. After the car was paid for plaintiff's son stated in the presence of Mr. Tanner, an officer of the defendant, ''Father, it is too bad that we did not have this date of guaranty in the contract.'' Plaintiff answered, ''It is all right as long as they thoroughly understand it, and they are a good reliable firm and it is unnecessary.'' Mr. Tanner upon hearing this said nothing.

On May 31, 1921, the price of the model of car which plaintiff purchased declined $330. Plaintiff wrote defendant that as the price of the car that was sold to him was guaranteed to him to August 1st he expected to receive a check from defendant of the amount of the decline. Defendant answered this letter by saying that there had been no guaranty in the price to August 1st, and refused to pay plaintiff. Plaintiff attempted to get a settlement of money with the defendant until August 1st, when after talking to his attorney he tendered back the car and demanded the purchase price. Defendant introduced no testimony.

It is contended that the statements made to plaintiff that defendant had a letter from the manufacturer which was a representation better than any writing guaranteeing that there would be no decline in the price until the end of the selling season, which was July 1st, and that defendant would extend that guaranty until August 1st, ''were the affirmation of material existing facts relating to existing business conditions and arrangements in reference to which the contract was made, and being false, constituted a fraudulent misrepresentation and not the mere expression of an opinion or a mere promise to be performed in the future.'' Of course, it is well settled in this State that a promise to do something in the future

is not a misrepresentation of an existing fact even though there is no intention to fulfill the promise at the time it was made. [Younger v. Hoge, 211 Mo. 444, 455, 456; Missouri Loan & Investment Co. v. Trust Co., 175 Mo. App. 646; 1 Black on Rescission and Cancellation, sec. 90, p. 229, and note.] But it is held that where representations do not relate so much to a future event as to existing facts, conditions or arrangements on which an expectation of that event may be founded, are not to be regarded as merely promissory. [Stonemets v. Head, 248 Mo. 243, 265; 1 Black on Rescission and Cancelation, par. 89, p. 224; Pomeroy's Equity Jurisprudence, par. 878, pp. 1814, 1815, (4th Ed.).] It is stated in Stonemets v. Head, supra, "The statements which most frequently come within this branch of the rule are those concerning value."

We do not think that the petition is broad enough to allege that fraud was committed in the manner now contended for. The petition alleges that to induce plaintiff to sign the contract defendant stated that it would incorporate in their agreement the provision that plaintiff should be protected against any decline in the price of cars until August 1, 1921, and assured him that it was unnecessary to incorporate such understanding as a clause in the contract. The petition further alleges that it was represented that if there was a decline in the price before August 1, 1921, the manufacturer would immediately refund the amount of any such decline; that defendant knew that it did not represent the manufacturer at the time it made these representations; that this was unknown to plaintiff, and that defendant made the representations without any intention of carrying them out; that plaintiff was induced to sign the contract upon the statements and representations of the defendant that the defendant and the manufacturer would protect him against any decline in the price of cars until August 1, 1921.

As we view the petition the fraud alleged is that defendant represented that it and the Buick Motor Com-

pany would protect plaintiff against any decline in the price of cars prior to August 1, 1921. That is to say, they would immediately refund to plaintiff the amount of any such decline, if any, on his car; that it was not necessary to have such a clause in the written contract; that in making such statement defendant knew that it did not represent the Buick Motor Company and that this fact was unknown to plaintiff, and that the statements were made without an intention to carry them out. It would seem then that the petition does not allege false representations in relation to any existing business condition and arrangement *not to reduce the price* of the automobile prior to August 1st, but merely that if there *was a decline* in the price, the amount of the decline would be immediately refunded to plaintiff by the manufacturer; that at the time the statements were made defendant did not represent the manufacturer and had no intention of making the promise good.

However, even had the matters now urged been pleaded, the evidence fails to show that there was any misrepresentation as to existing facts, conditions or arrangements that did not relate to the future. The evidence shows that *defendant* did not represent to plaintiff that all commodities were declining in price and that automobiles were the only commodity that had not declined but that plaintiff stated this. Defendant merely represented that it had a letter from the manufacturer *addressed to defendant* stating that there would be no decline in the price of automobiles until the end of the selling season, which was represented to be July 1st. This is the only representation of an existing fact made unless there was a representation that defendant had authority from the manufacturer to use the letter in securing sales and authority to extend the statements contained in the letter to cover a period ending August 1, 1921, a matter which we will hereinafter discuss; also as to whether if such representations as to authority were made, they were not collateral to the contract.

There is no evidence in the record showing whether there was any such letter in existence. Plaintiff testi-

fied that Mr. Tanner told him after plaintiff had demanded of defendant the $330, to use plaintiff's own words,—"Mr. Tanner disclaimed responsibility for the guaranty to August 1st and said there had been no such guaranty made to them." It will be borne in mind that the letter said there would be no decline in price until the end of the selling season, which was July 1st. This statement of Mr. Tanner may be evidence that there was no authority on the part of the defendant to make or extend the guaranty to *August 1st* on behalf of the Buick Motor Company, but is not evidence that the Buick Motor Company did not write a letter to the defendant stating that there would be no change in the price of automobiles until *July 1st*. But even had such a letter not been written, we do not think that the statement to plaintiff that it had been written was a material representation of an existing business condition or arrangement, for the reason that the letter itself merely expressed an intention not to change the price of automobiles until July 1st, which intention related to the future and was subject to change at any time.

This case is readily distinguished from the case of Buhler v. Loftus, 165 Pac. 601, and other cases cited by the plaintiff. In the Buhler case plaintiff, A. J. Buhler, entered into a written contract in which he was appointed for a period of ten years exclusive agent for a distinct territory for a certain corporation. He was required to buy stock of the corporation in order to obtain this contract, which he did, giving his note to the agent of the corporation in the sum of $2000, secured by mortgage upon the land. Plaintiffs brought suit to cancel the mortgage and note on the ground of fraud. In order to induce said plaintiff to enter into the contract and to give the mortgage and note, it was represented to him by the agent of the corporation that while the company was not then ready to begin business, it was in such a condition that it would be ready in about two months and would then be prepared to arrange the funds required to enable said plaintiff to negotiate loans in its behalf, a

business it was organized to conduct. The corporation never did any business for the reason that a sufficient number of shares of stock could not be sold to realize the necessary money. It was held that this was an affirmation of a matter in the future as a fact existing at the time the contract was made, and was therefore a fraud.

It is apparent in that case that the representations made were of an existing fact material to the contract, as from the facts existing at that time the company could not have entered into business in two months. The representations therefore related to existing facts and conditions while the representations in the case at bar were not, as the contents of the letter were seen by plaintiff and plaintiff knew by reading the letter that it merely contained a statement as to the intention of the Buick Motor Company, which intention, of course, related to matters in the future and which were subject to change. There is no contention that the letter constituted a contract or agreement with anyone on the part of the manufacturer that it would not reduce the price of its cars. The fact, if it be a fact, that the manufacturer authorized defendant to show the letter to any or all of its customers for the purpose of inducing the customer to buy an automobile would make no difference. The intention expressed in the letter to not alter the price, as we have before stated, subject to change. It will be noted that the petition alleges that the representations were that ''The Buick Motor Company would immediately refund the amount of any such decline'' in case there was any, while the letter merely stated, ''There would be no decline during the selling season.''

However, it is insisted by plaintiff that the contents of the letter were such as to lead plaintiff to believe that the Buick Motor Company not only had adopted a business policy of guaranteeing the price of cars but that it was actually guaranteeing and had already guaranteed all the cars being sold to customer by stating that there would positively be no decline in price. Assuming that

the letter is susceptible of such a construction, we think it not material to the contract. It will be borne in mind that there is no evidence as to the exact relationship between the Buick Motor Company and defendant. Now, the letter alleged to have been written by the Buick Motor Company to the effect that it would not change the price of automobiles to defendant and other dealers until July 1st, together with the testimony, if there be any, to the effect that defendant had authority from the Buick Motor Company to use the letter in soliciting business, may be evidence that the Buick Motor Company had adopted a policy of guaranteeing and was guaranteeing purchasers of Buick automobiles against a decline prior to July 1st, but not evidence that it was making such a guarantee to *August 1st*. The evidence can be stretched no further than to show that defendant represented that it had authority from the Buick Motor Company to extend such a guaranty to plaintiff to July 1st and to promise that the Buick Motor Company would immediately send, in case of such a decline, a check to cover the amount thereof. Any policy of the Buick Company, such as that claimed to have been in existence by plaintiff, to be material must have extended to August 1st. Plaintiff was not interested in any general policy of the Buick Motor Company extending only to July 1st, and there is no evidence of any representation of the existence of any such policy further than the last mentioned date.

However, it is insisted that the alleged false representations as to the agency of the defendant induced plaintiff to enter into the contract and plaintiff was entitled to the relief sought for this reason. The petition by inference only alleges that defendant represented that it was the agent of the Buick Motor Company for the purpose of making the agreement. There is testimony tending to show that the Buick Motor Company gave defendant no authority to make the guaranty claimed by plaintiff but there is no direct proof that defendant rep-

resented that it had authority to make such representations on the part of the Buick Motor Company.

However, plaintiff states that the evidence shows that defendant assumed to represent the Buick Motor Company, that this was sufficient proof of representation of agency. Assuming that this is sufficient to prove that defendant represented that it had authority to make such representations upon the part of the Buick Motor Company, we do not believe that they were of a kind and nature sufficient upon which to base this action. It is stated in Dawe v. Morris, 149 Mass. 188, 192—

". . . in order that a false representation may form the foundation of an action of deceit, it must be as to some subject material to the contract itself. If it merely affect the probability that it will be kept, it is collateral to it. 'Representations as to matters which are merely collateral, and do not constitute essential elements of the contract into which the plaintiff is induced to enter, are not sufficient.' "

We fully recognize the rule that where one person induces another to part with his property by a false representation of an existing or past fact, accompanied with a promise to do something in the future, grounds for relief are afforded. [State v. Vandenburg, 159 Mo. 230, 237; 1 Black on Recission and Cancelation, par. 92, p. 236.] We think that the representations, if any, as to the agency in the case at bar were merely to a collateral matter. The thing that induced plaintiff to enter into the contract was the representation that he would be paid the difference between the value of the automobile on the day of its purchase and the cost on August 1, 1921, should there be a decline in the selling price. Whether or not this agreement was carried out, it was unimportant to plaintiff as to defendant's authority from the Buick Motor Company to make the representations in its behalf. There is no claim that there could be any liability on the part of the Buick Motor Company even if it had authorized defendant to make the representations, as the contract was made by the defendant and

there is nothing in the record to show what was the relationship between the two.

We think that the rule stated in State v. Vandenburg, supra, has no application in this case. In that case the defendant represented to one Schloeman that he was an agent of an insurance company and obtained a note from him for the payment of the first premium the promise that the agent would within a few days deliver to him a policy. Defendant was not an agent of the insurance company as represented. In that case the misrepresentation as to agency was material and was a part of the contract itself and seriously affected it and resulted in Schloeman's parting with his property. In the case at bar there is no question of the person who solicited the contract with plaintiff having authority to represent the defendant, the principal, and the automobile was sold and delivered in accordance with the contract entered into. While the representation that defendant had authority to make statements on behalf of the Buick Motor Company may have been considered by the plaintiff in making up his mind to sign the contract yet that is not alone sufficient. The case of Dawe v. Morris, supra, is directly in point on this question.

However, it is insisted that the evidence shows that the representations made by the defendant relative to what defendant and the Buick Motor Company would do in case of a decline in the price, were made without any intention of fulfilling the promise and, therefore, were fraudulent. Assuming that this promise was made without any intention on the part of defendant to carry it out, under the authorities in this State this is not sufficient to base an action for fraud and deceit or an action for rescission (Younger H. Hoge, supra; Missouri Loan & Investment Co. v. Trust Co., supra; 1 Black on Rescission and Cancelation, par. 90 p. 229, and note), although there is much respectable authority to the contrary. [1 Black on Rescission and Cancelation, par. 90, p. 228.]

The judgment is affirmed. All concur.