NEWMAN ET AL. *v.* NEWMAN.

[No. 27,847. Filed May 12, 1943.]

434

*Todd and Craig,* of Indianapolis, for appellants.

*Homer Elliott,* of Martinsville, *John A. Royse* and *Howard P. Travis,* both of Indianapolis, for appellee.

RICHMAN, C. J.—E. Charles Newman instituted this action against his only child, appellant Everett E. Newman, whose wife is appellant Daisy N. Newman. The plaintiff died after the trial and his widow, Geneva E. Newman, a childless second wife, qualified as executrix of his will and as such was substituted as plaintiff. The

object of the action was to set aside a conveyance of real estate and transfers of personal property alleged to have been procured by the son through fraud and duress. There were special findings of fact and conclusions of law with decree granting the relief prayed.

Appellants' main contention is that no fraud was shown. The court found "that the defendant, Everett E. Newman made certain false and fraudulent representations to the plaintiff E. Charles Newman concerning the condition of his eyesight and that plaintiff would soon become blind and urged plaintiff to transfer his said property to defendant while he could still see . . . that said defendant well knew at the time of making said representations that they were false and fraudulent." It was also found that the father believed the statements and relying thereon conveyed and transferred his property to the son. In their motion for a new trial appellants challenged the finding as not sustained by sufficient evidence, asserting in their brief that there was no evidence of falsity.

The father, who was 76 years old at the time of the trial, testified as follows:

"We went to an optician and he said you have some blood clots on your eye and I advise you to go to Doctor Matthews at the Hume-Mansur building and he is at the present at Hattiesburg, Miss., and we went there and he examined my eyes and he said, Mr. Newman you need treatment and he prescribed medicine and I left and he says now you come back and I'll check on you to see how those eyes progress, the eye sight and vision, and as we walked out, E. E. Newman, he walked back, he said 'wait a minute I want to see the doctor' and he walked back and talked privately to him and when he came out he said 'the doctor said it looks very dark, possibly you will go blind and we must hurry up and have this thing straightened out before you go blind, in case you go blind it will

be too bad' and that is just about the sum substance of the conversation."

The son denied having any private conversation with the doctor. If there was no such conversation, the report by the son of what the doctor said about blindness, as testified by the father, was false and known by the son to be false when made. While the son also denied making any such report, the court could reject such denial as untrue. What part, if any, of the testimony of a witness is credible must be determined by the trier of facts.

The court found that another false representation with reference to legal advice received by the son was made and relied upon. While there is evidence of its making there is none as to its falsity. Recovery may be based however on only one false representation if the other elements establishing the fraud are present. So the absence of proof as to the second representation is not fatal.

In this connection the court further found that the father also relied upon his son's unfulfilled promise to make certain payments if the property was transferred. We do not think the facts here are like those in *Shoup* v. *Tanner-Buick Co.* (1922), 211 Mo. App. 480, 245 S. W. 364, cited by appellants. In that case the court said:

"We fully recognize the rule that, where one person induces another to part with his property by a false representation of an existing or past fact, accompanied with a promise to do something in the future, grounds for relief are afforded. *State* v. *Vandenburg*, 159 Mo. 230, 237, 60 S. W. 79; 1 Black on Rescission and Cancellation, Par. 92, p. 236."

So recognizing the true rule the court distinguished the facts before it by the ensuing sentence:

> "We think that the representations, if any, as to the agency in the case at bar were merely to a collateral matter."

The representation as to the doctor's prediction of blindness was not collateral but, as the court found, was the basis of and directly resulted in the transfer of the property. We think the evidence was sufficient to sustain the finding. The foregoing discussion disposes also of most of appellants' argument as to error in conclusions of law because it is predicated principally upon the absence of fraud.

Appellants contend that "there was a contract between the parties which was ratified by decedent" through his acceptance of a few payments upon the sums promised him by the son. There was evidence disclosing that as soon as he realized that he had been defrauded, the father repeatedly demanded restoration of his property. The fact that he received from his son some money representing income of that property may be evidence but is not conclusive of a ratification. Besides, this was a matter of defense to be pleaded and proved. The court's findings are silent on the subject which is equivalent to a finding against appellants who had the burden. *Rankin* v. *McCollister* (1911), 175 Ind. 387, 93 N. E. 209.

While there may have been opportunity for decedent to obtain information and advice from other sources there is no finding that he did so. Nor did he have any such obligation. *Kramer* v. *Williamson* (1893), 135 Ind. 655, 659, 35 N. E. 388, 390. In their answer appellants admit "the intricate relationship between the parties, the working arrangements

between them and their close fiduciary relationship."
On the one side was a man 73 years of age with impaired
vision and, as the court found, suffering from "the
general infirmities of age." On the other side was his
40-year-old son eager to get possession of property
which he evidently feared would be given to his step-
mother. In *Whitesell* v. *Strickler* (1907), 167 Ind. 602,
611, 78 N. E. 845, 848, the court said:

> "In situations like this, and in all cases where
> the relations in life are such that influence is ac-
> quired by one and confidence reposed by another,
> so as to give rise to opportunity for imposition or
> undue influence, such as arise between guardian
> and ward, parent and child, husband and wife,
> principal and agent, and the like, and where one
> of the parties, by reason of his surroundings, is
> unable to treat with the other upon terms of equal-
> ity, courts of equity will carefully scrutinize the
> dealings between them and compel restoration in
> the absence of absolute fairness."

See also 23 Am. Jur. *Fraud and Deceit* § 14, p. 763FF.

The case of *Fletcher Trust Co.* v. *Hauser* (1938), 105
Ind. App. 281, 11 N. E. (2d) 1012, cited by appellants,
lends them no comfort. There as here it was contended
that "the parties dealt at arms length" but it was held
otherwise and the correct rule was stated (p. 298) and
applied.

Besides ordering reconveyance of the real estate con-
veyed to his son by decedent, the decree also ordered
conveyance to the father of a lot purchased by
the son with funds obtained by the fraud. Ap-
pellants assert that this was beyond the power
of the court. The cases they cite are on subjects far
afield. A court of equity "has a broad discretion in
forming its decrees, in order to adapt the relief to the

circumstances of particular cases." *Nichols* v. *Boden-wein et al.* (1932), 107 Fla. 25, 44, 146 So. 86, 93, 146 So. 659.

Appellant Everett Newman contends that by his supervision and labor in improving the properties "he created the greater value" than existed at the time of the transfer. The court found that "he has received full compensation for such services in the amounts he has used and retained for his personal use and benefit." We have not attempted to examine the evidence to ascertain the total of such amounts but appellee asserts in her brief that "appellant failed to account at the trial for about $2,000 of the funds which he received from his father." Appellants made no adequate reply to this assertion. In any event the above finding put the matter at rest.

There was no harmful error in the rulings on admission of evidence. As to the first assignment in the motion for new trial the record discloses that there was no objection to the question. The answer was responsive. The motion to strike it out presents no question. Assignments 3, 4, 5 and 6 allege error in permitting decedent to answer questions as to his believing statements made to him by his son. Objection was on the ground that the question "calls for a mental operation." Appellants cite no authority for their contention. The evidence was competent. 27 C. J. *Fraud* § 193, p. 58; 20 Am. Jur. *Evidence* § 335, p. 312; *Metropolitan Life Ins. Co.* v. *Becraft* (1938), 213 Ind. 378, 12 N. E. (2d) 952. Assignment 7 was error in sustaining an objection to a question on cross-examination of the plaintiff. The objection was on the ground that the question was dual. The record shows that appellants did not press for an answer by proper questions which could easily have been framed. The

subject-matter had been inquired about and an answer, if given, would have shed no light upon the controversy.

The decree is affirmed.

NOTE.—Reported in 48 N. E. (2d) 455.