LABORERS LOCAL UNION NO. 204, William Eyre, Charles Toth, Michael J. Short, Robert Faulkenburg, IBEW Local Union No. 725, William J. Brooks, Plumbers & Steamfitters Local Union No. 157, William L. Fenton, Jimmie L. Strange, Appellants,

v.

PUBLIC SERVICE COMPANY OF INDIANA, Indiana Utility Regulatory Commission, Nucor Corporation, and the Office of the Utility Consumer Counselor, Appellees.

No. 93S02–8711–EX–1071.

Supreme Court of Indiana.

June 20, 1988.

John F. Wickes, Jr., Lynne D. Lidke, Scopelitis, Garvin & Wickes, Indianapolis, for appellants.

Thomas E. Kieper, Robert K. Johnson, Indianapolis, for Office of the Utility Consumer Counselor.

Ronald J. Brothers, Plainfield, for Public Service Co. of Indiana, Inc.

Daniel C. Kaufman, Ritts, Brickfield & Kaufman, Washington, D.C., Richard E. Deer, Stanley C. Fickle, Michael G. Banta, Barnes & Thornburg, Indianapolis, for Nucor Corp.

DeBRULER, Justice.

Nucor Corporation (Nucor) plans to construct and operate a new electric steel making mill. The projected cost of the mill is two hundred to two hundred and fifty million dollars. Following negotiations with several states, Nucor elected to construct its new steel mill in Montgomery County, Indiana, conditioned upon Indiana Utility Regulatory Commission (Commission) approval of an agreement between Nucor and Public Service Indiana (PSI), an electric utility company. The Commission, after public hearing, approved the agreement. Appellant's herein, several unions and individual PSI rate payers, seek judicial review of the Commission's final order approving the agreement.

Appellants' brief raises issues concerning the propriety of the Commission's findings and also the question of whether or not the rate package afforded Nucor is discriminatory as a matter of law. In response, all three appellees, Nucor, PSI and the Utility Consumer Counselor, challenge appellant's standing to bring the appeal.

The two statutes relevant to this issue are Ind.Code § 8–1–3–1 and § 8–1–3–3. The former provides a method for an appeal of a Commission decision by any person or entity "adversely affected" by a final order of the Commission. The latter provides a method for a person or entity to be named as a party "appellant or appellee" in an appeal of a Commission decision if that person or entity demonstrates a "substantial interest" in the determination of the appeal.

In this case, no appeal was taken by any party to the proceedings before the Commission nor was an appeal initiated by a person or entity asserting an adverse affect under Ind.Code § 8–1–3–1. Rather, all

appellants herein filed petitions to intervene alleging a substantial interest in the determination of the action (§ 8–1–3–3). While the petitions additionally contained language to the effect that the Commission's final order had an adverse affect upon appellants, in their reply brief appellants reassert that the petitions were filed in accordance with Ind.Code § 8–1–3–3 and met the statutory "standing" requirement that a substantial interest in the outcome of the proceedings be established.

At issue is whether or not a showing of "substantial interest" under § 8–1–3–3 is sufficient to confer the right to bring an appeal or if it is simply a necessary showing to bring one within § 8–1–3–1, which grants the opportunity to appeal only to those people or entities who are deemed adversely affected by a Commission order.

Appellants claim that a showing of "substantial interest" is sufficient, that this Court recognized that sufficiency in its order granting the petitions to be made party appellants, and, in the alternative, that the Commission's final order approving the agreement had an adverse affect upon them.

Appellants assert that this Court recognized their standing to bring this appeal when it granted their verified petitions to be named party appellants. The verified petitions were granted by this Court in the order accepting transfer of this cause. However, a determination of the validity of the issues raised in the petitions was not inherent in the decision to grant them. Rather, the only permissible inference from that decision is that the Court recognized appellant's substantial interest in any determination upon the merits.

Ind.Code § 8–1–3–1 establishes that in order to bring an appeal, a party must be adversely affected by a ruling of the Commission. Ind.Code § 8–1–3–3 is merely an avenue through which a person or entity may be heard in the appeal. The language of § 8–1–3–3 establishes that a petitioner may request to be made a party appellant *or appellee.* It is difficult to imagine a request to be made an appellee in a non-existent appeal. Due to the nature of the

duties of the Commission, persons or entities may be affected in many different ways. One who has a substantial interest in the outcome of the Court's review may wish to have certain views aired, even if an adverse affect would not result from the decision regardless of the outcome. The granting of the verified petitions to be named party appellants simply permitted those petitioners to proceed in the manner of party appellants. It did not relieve them of any of the burdens. A prerequisite to a review by this Court on the merits of the appeal is a showing that appellants suffered an adverse affect as a result of the Commission's decision.

Appellants contend that the rates being afforded Nucor are discriminatory and that this adversely affects them. However, the contention is not buttressed by a sufficient rationale showing what specific adverse affect they have sustained due to the Commission's order. Before this Court will reach the merits of a discrimination claim, it is essential that appellants convince us they have the statutory standing to maintain the appeal. Appellants' status as ratepayers is not sufficient to grant them that privilege. *Terre Haute Gas Corp. v. Johnson* (1942), 221 Ind. 499, 45 N.E.2d 484. Since appellants mistakenly assert that a showing of a substantial interest in the outcome of the proceedings is sufficient, we will return to their petitions in order to attempt to determine if they have indeed been adversely affected.

The petitions allege that "[a]s a PSI ratepayer, I have a substantial interest in any Commission order regarding PSI rates." This was recognized by this Court's granting of their petitions to be made party appellants. They continue that "[m]oreover, as will be shown by this appeal, the Commission's Order unlawfully permits PSI to engage in discriminatory and preferential rate-making treatment that has an adverse effect on me. Specifically, the economic development rate afforded Nucor requires other rate-payers to bear part of the cost of serving Nucor and also permits PSI to forego revenue that could otherwise be employed to improve the rates charged and

services provided to all rate-payers." These allegations will be addressed individually.

Initially it is asserted that appellants will be forced to bear part of the cost of PSI serving Nucor due to the agreement between the two. However, contrary to this assertion, evidence was presented and the Commission explicitly found in its order that "the annual incremental revenue to be derived by Petitioner in serving the new electrical load at the Nucor Plant covered by the Agreement will at least cover the annual incremental costs to be incurred by Petitioner in serving such new load". Appellants have presented no evidence contrary to this position.

Evidence was presented that the 100 megawatt load of the Nucor plant may advance PSI's need for capacity by more than a year. In order to offset the potential advancement of the need for additional power, the State of Indiana offered to establish a fund in excess of three million dollars to contribute towards advanced capacity additions. The amount of the fund was calculated to approximately offset the cost of the eighth year of economic incentive rates negotiated in the agreement and was for the benefit of PSI ratepayers should advancement of PSI's generation construction schedule occur by reason of the agreement. Assurance was given that maximum efforts would be expended to ensure creation of the fund. The fund was in fact created by the legislature. *House Enrolled Act No. 1304; Public Law 83–1988; I.C. 8–1–8.6.* The promise to establish a fund to cover potential advancement of the generation needs adequately protected PSI's ratepayers. There has been no showing that appellants will have to bear part of the cost of serving Nucor.

The second adverse affect alleged in the petitions to be made party appellants is that the agreement permits PSI to forego revenue that could otherwise be employed to improve the rates charged and services provided to all rate payers. The crux of this argument appears to be that if PSI charged Nucor full rates and granted them no concessions or economic benefits, all PSI customers would benefit, because as a result of the increased income, their rates would go down. This is, however, also true of each rate classification currently charged by PSI and other utilities. If each customer, residential, commercial and industrial, were charged at the highest rate available, then appellants, assuming arguendo that they were already paying the highest rate available, would benefit by lower rates. Different rate classifications necessarily entail this effect.

The Commission was presented with evidence that economic development incentive rates were necessary to meet competition in order for Nucor to locate its new strip mill within the State of Indiana and within PSI's territory. There was no evidence presented that Nucor would locate in Indiana absent approval of this agreement. Therefore, the potential of charging full, non-discounted rates to the Nucor plant and receiving that revenue was non-existent. The only way PSI rate payers will receive *any* benefit from Nucor is by approval of the agreement.

Appellants have not shown they will be adversely affected due to the rate classification granted Nucor. Absent that classification, Nucor would not locate it's plant in PSI territory. Further, appellants, as rate payers, will receive a direct economic benefit under the agreement. Proposed Standard Contract Rider No. 14 sets forth a mechanism whereby PSI's other retail ratepayers (those retail customers not served under economic development rates) will receive a credit for Petitioner's recovery of demand related revenues from the Nucor Plant. This credit will be computed and applied quarterly.

Judicial review of Commission decisions is granted only to those who are adversely affected by final orders of the Commission. While ratepayers do have substantial interests in the decisions of the Commission, it is necessary to go that further step and demonstrate some adverse affect as a result before the appeal will be entertained on the merits. This appellants have not done. Consequently, the petition for oral

argument is denied and the appeal is hereby dismissed.

SHEPARD, C.J., not participating

GIVAN, PIVARNIK and DICKSON, JJ., concur.