In the Matter of the Investigation, on the Commission's own motion into the Effect of the Tax Reform Act of 1986 Upon Indiana Public Utilities and to Develop Uniform Standards and Procedures for Implementing any Necessary Changes in Accounting Treatment or Adjustments to Rates and Charges.

HOME BUILDER'S ASSOCIATION OF INDIANA, INC., Appellant (Intervenor Below),

v.

INDIANA UTILITY REGULATORY COMMISSION (f/k/a Public Service Commission of Indiana), et al., Appellees (Agency and Respondents Below).

No. 93A02–8706–EX–252.

Court of Appeals of Indiana, Third District.

Sept. 25, 1989.

John M. Reames, Joe N. Van Valer, Van Valer & Williams, Greenwood, for appellant.

William B. Powers, Indianapolis, for Indiana Chapter/National Ass'n of Water Companies.

William F. Welch, Randolph L. Seger, McHale, Cook & Welch, P.C., Indianapolis, for Gary–Hobart Water Corp.

Fred E. Schlegel, Mary M. Stanley, Julie Sommers, Baker & Daniels, Indianapolis, for Indianapolis Water Co.

STATON, Judge.

Home Builders Association of Indiana, Inc. (HBAI), appeals an order of the Indiana Utility Regulatory Commission (Commission), following an investigation into the rates and charges of Indiana public utility corporations in consideration of the reductions in the corporate federal income tax rate resulting from the Tax Reform Act of 1986 (TRA–86). Gary Hobart Water Corp., Indianapolis Water Company and Indiana Chapter/National Association of Water Companies (collectively referred to as "Water Companies") filed Briefs of Appellee. HBAI raises three issues:

1. Whether the Commission was without jurisdiction to issue the June 1 order because it failed to give proper statutory notice of the proceedings.

2. Whether the Commission was without jurisdiction to issue the June 1 order because it established a pre-filing date for evidence only nine (9) days after notice of the formal hearing was given.

3. Whether the Commission's June 1 order in regard to the treatment of contributions in aid of construction is contrary to law.

We affirm.

The Commission instituted an investigation by order on November 26, 1986, pursuant to Indiana Code 8–1–2–58. The purpose of the investigation was to determine the "implications and impact of TRA–86 [which reduces the corporate tax rate from 46% to 34%, effective July 1, 1987] upon Indiana public utilities and to consider the development of uniform standards and procedures for implementing any necessary changes in accounting treatment or adjustments to rates and charges of such public utilities." (R. 3.) The Commission formed an Executive Committee and gave it the duty of preparing a comprehensive report discussing the effect of TRA–86, devising a plan of action by which the Commission might address those effects and recommending a specific course of action. The Executive Committee submitted its report to the Commission on April 15, 1987.

On April 21, 1987, the Commission issued a docket entry determining that a formal hearing should be held to receive evidence pertinent to the implications and impact of TRA–86 and its potential for requiring rate adjustments. By the same entry, the Commission set the time and place for the hearing to be held on May 13, 1987, and determined that all potentially affected utilities

should be named as respondents. The entry also provided that all prepared testimony should be prefiled with the Commission by May 4, 1987.

Public notice of the investigation and hearing date was published in accordance with the statutory requirements between April 23rd and May 4th, 1987. HBAI, an association of, among others, residential developers, filed its petition for leave to intervene on May 6, 1987, which the Commission granted on May 11, 1987. The public hearing was held on May 13 and 14, 1987. In addition to evidence presented by several parties, the report and recommendations of the Executive Committee were admitted into evidence without objection. The Commission entered its interim order on June 1, 1987 ("June 1 order").

The portion of the order relevant to this appeal concerns TRA-86's effect on contributions-in-aid-of-construction ("CIAC"). CIAC arise under Rule 25 of the Commission's Rules and Standards for Water Utilities, 170 IAC 6-1-25. Under Rule 25, a water utility must make, free of charge, a main extension if it costs less than three times the estimated annual revenue anticipated to be received from customers connecting to the main. If the cost of the extension exceeds three times such estimated annual revenue, the applicant for the main extension, frequently developers of new residential areas, must advance to the utility funds to cover the excess. During the ten year period following the date the main is placed in service, the utility must refund to the applicant an amount equal to three times the estimated annual revenue from each additional new customer connecting to the main not previously accounted for. After ten years, any unrefunded advances become the utility's property and are accounted for on the books as CIAC.

Prior to 1987, CIAC were not recognized as taxable income to the utility. However, TRA-86 made them so effective January 1, 1987. It appears that the new tax law treats as CIAC even those funds eventually refunded, making them taxable. The utilities have treated the tax as an added cost of construction of the main extension and

have passed it (and the tax owing on the collection of the CIAC tax) along to the developer. This practice is known as the "gross up" method of collecting the CIAC tax.

The Executive Committee, in its recommendation report, noted that shifting the tax to the applicant could prohibit economic development, particularly in economically disadvantaged residential areas. As a result, the Executive Committee recommended two alternative methods, in addition to the "gross up" method, for treating the CIAC tax. The three alternatives recommended were:

1. Gross up. Continue applying the existing 170 I.A.C. 6-1-25 to cover the associated tax as a "cost of construction". This tax would allow the utility to collect the tax, and the tax owing on that collection of tax, from applicants for main extensions.

2. Partial Tax Expense. Collect only construction costs of a main extension (excluding tax) and recover, through rates, the income tax, using a 34% rate, on 50% of customer advances (reflecting a compromise percentage of customer advances that have historically become contributions-in-aid-of-construction). Any and all tax owing on the remaining 50% of customer advances shall be permanently absorbed by any utility operating under this alternative.

3. Gross up—No Refund. All applicants for main extensions are given the option to choose one of the following alternatives:
   (1) Gross up (see 1 above), or;
   (2) No refund ... collect only construction costs of a main extension (excluding tax) from applicants. The utility pays the tax on the contribution-in-aid-of-construction. No refunds based on subsequent connections are made. This approach will require amending 170 I.A.C. 6-1-25.

(R. 291.)

In its June 1 order, the Commission approved and adopted the Executive Committee's recommendations and also ordered

that a formal proceeding addressing the potential modifications to Rule 25 shall be initiated.[1]

## I.

### *Standing*

■ Water Companies raise the issue whether HBAI is adversely affected by the Commission's order such that it has standing to bring this appeal. Indiana Code 8–1–3–1 establishes that in order to bring an appeal a party must be adversely affected by an order of the Commission. *Laborers Local No. 204 v. Public Service Company of Indiana* (1988), Ind., 524 N.E.2d 318, 319. Water Companies argue that HBAI benefits from the Commission order because it provides for alternatives to the "gross up" method which may not pass the cost of the tax on to the developers. "Adversely affected" means that a party has sustained or is in immediate danger of sustaining a direct injury as a result of the order. *Terre Haute Gas Corp. v. Johnson* (1942), 221 Ind. 499, 45 N.E.2d 484, 486, *modified,* 221 Ind. 499, 48 N.E.2d 455. Although the Commission's order does provide alternatives that would benefit HBAI, it also provides that water and sewer companies may continue to pass the cost of the tax along to the developers as an added cost of construction. This clearly affects HBAI adversely as this method will increase the cost to HBAI to develop areas. The fact that this method was already practiced by the utilities does not make the Commission's reaffirmance of its availability any less adverse to HBAI. Standing is not removed because a party might be better off under a Commission order than it was prior to the order if the effect of the order is nevertheless injurious. *See Johnson, supra* 48 N.E.2d at 487 (rate payers had standing to appeal Commission order which reduced rates because rate payers may have believed that the reduced rates were exorbitant).

---

1. That rule-making proceeding was initiated by the Commission on November 4, 1987, as Cause

## II.

### *Notice*

■ HBAI raises the issue whether the Commission was without jurisdiction to issue the June 1 order because it failed to give notice of the hearing pursuant to statute. The statute at issue is IC 8–1–2–59, which provides:

> Sec. 59. If, after making such investigation, the commission becomes satisfied that sufficient grounds exist to warrant a formal hearing being ordered as to the matter so investigated, it shall furnish such public utility interested a statement notifying the public utility of the matters under investigation. Ten (10) days after such notice has been given, the commission may proceed to set a time and place for a hearing and an investigation, as hereinbefore provided.

HBAI contends that the June 1 order is void because the Commission set the date and time of hearing by the same order it determined a hearing was necessary. HBAI argues the Commission was required to wait ten (10) days after informing the utilities of the matter under investigation and the need for a formal hearing before it could set a time and place for the hearing. Water Companies counter that HBAI does not have standing to challenge the Commission's procedure because HBAI did not intervene in the proceedings until after the order was made and intervenors must take the case as it is at the time of intervention. Further, they argue that HBAI cannot complain because it is not a public utility affected by the investigation. HBAI responds that it does have standing because if the Commission did not give the proper notice of the hearing pursuant to statute then it did not have jurisdiction to issue the June 1 order.

■ Generally, an intervenor is bound by all stipulations and rulings prior to the time he is made a party and an intervenor takes the case as he finds it. *Sexton v. Johnson Suburban Utilities, Inc.* (1981),

No. RM3–1987.

Ind.App., 422 N.E.2d 1293, 1297, *trans. denied; L.S. Ayres v. Indianapolis Power & Light* (1976), 169 Ind.App. 652, 351 N.E.2d 814, 824; 170 IAC 1–1–9(c). We have not found any cases either in Indiana or from other jurisdictions addressing the issue whether an intervenor may attack the jurisdiction of the Commission to issue an order based on following improper procedure in giving notice to parties prior to the time of intervention. If the question is one of notice to acquire jurisdiction over the person, the issue of proper notice can be waived by the complaining party who has actual notice of the proceedings and participates in the proceedings. *City of New Haven v. Indiana Suburban Sewers, Inc.* (1972), 257 Ind. 609, 277 N.E.2d 361, 362. An intervenor may not raise errors of a technical nature after the error has been waived by the other parties. *Woerner v. City of Indianapolis* (1961), 242 Ind. 253, 177 N.E.2d 34, 39, *cert. denied* 368 U.S. 989, 82 S.Ct. 605, 7 L.Ed.2d 526. However, if the notice prescribed is a prerequisite to jurisdiction of the subject matter of the proceedings, the right to challenge such jurisdiction cannot be lost or waived. *City of New Haven, supra.* It logically follows that if the issue is one of jurisdiction of the proceedings, which may be raised any time, an intervenor, once made a party to the proceedings, would have the right to challenge the Commission's jurisdiction.

Thus, we must determine which type of notice statute is involved here. IC 8–1–2–58 gives the Commission authority to investigate any matter relating to any public utility with or without giving notice of such investigation. However, the Commission does not have the authority to issue orders based solely on the investigation. *Sizemore v. Public Service Commission* (1961), 133 Ind.App. 51, 177 N.E.2d 743, 747–48. The Commission must give notice to the utilities of the matters under investigation and must set a time and place for public hearing before acting on the investigation. *Id.* IC 8–1–2–60 provides that notice of the time and place for such hearing shall be given to the public utility and to such other interested person as the Commission shall deem necessary, as provided in § 56. Section 56 provides that the Commission shall give ten (10) days notice of the time and place of the hearing. Additionally, IC 8–1–1–8 provides:

Sec. 8. (a) Notwithstanding any other statute relative to the publication of notice of hearings to be held by the utility regulatory commission publication of notice of hearings to be held by the commission shall be made only in accordance with this chapter.

(b) Whenever the utility regulatory commission shall order a hearing in any proceeding instituted by or against any public utility, except a motor vehicle carrier, notice of such hearing shall be given by one (1) publication appearing not less than ten (10) days prior to the date fixed for said hearing in two (2) newspapers of general circulation published in one (1) county wherein reside patrons or customers of said public utility who might be affected by an order made by the commission pursuant to said hearing. If two (2) newspapers of general circulation are not published in any such county, then one (1) publication appearing not less than ten (10) days prior to the date fixed for said hearing in one (1) newspaper of general circulation published in such county shall be sufficient. If no newspaper of general circulation is published in any such county, then the commission shall cause notice of such hearing to be given by one (1) publication appearing not less than ten (10) days prior to the date fixed for said hearing in two (2) newspapers of general circulation published in a county adjoining any county wherein reside patrons or customers of said public utility who might be affected by such order.

Generally, administrative notice statutes are strictly construed and notice in accordance with their provisions is a prerequisite to the validity of the administrative action. *Town of Beverly Shores Plan Commission v. Enright* (1984), Ind., 463 N.E.2d 246, 248. The cases that espouse this general rule have arisen under circumstances involving notice statutes similar to IC 8–1–1–8, specifying the manner in which notice

must, be given of a formal hearing. *See e.g. Id., L.S. Ayres & Co., supra.* Thus, in the case before us, the Commission acquired jurisdiction of the subject matter when notice of the time and place of public hearing was given ten (10) days prior to the date set for the hearing as prescribed by IC 8–1–1–8. *See City of New Haven, supra* 277 N.E.2d at 363; *AFL–CIO v. Southern Indiana Gas & Electric Co.* (1983), Ind. App., 443 N.E.2d 1243, 1245; *L.S. Ayres & Co., supra* 351 N.E.2d at 826.

To the contrary, the notice provision of IC 8–1–2–59, while perhaps necessary to acquire jurisdiction over a particular public utility, is not a prerequisite to the Commission's subject matter jurisdiction of the formal hearing. Because IC 8–1–2–59 applies specifically to the affected public utilities and does not affect the Commission's subject matter jurisdiction, HBAI, as an intervenor, cannot attack any irregularity, if any, in the manner that notice was given to the utilities pursuant to that statute. *See Woerner, supra.*

### III.

### *Pre–Filing*

■ HBAI next raises the issue whether establishing a pre-filing date for evidence nine (9) days after public notice was given deprived the Commission of subject matter jurisdiction over the rest of the proceedings, thereby making the June 1 order null and void. HBAI contends that the pre-filing date for evidence is effectively the hearing date since all evidence had to be submitted at that time. Thus, because the pre-filing date was only nine (9) days after notice was given,[2] instead of ten (10) days, the Commission did not have jurisdiction. We are not persuaded by HBAI's argument. Pursuant to 170 IAC 1–1–17(j), *parties* may be required to pre-file written testimony and exhibits with the Commission, serving copies of the same on all parties. The prepared testimony and exhibits are not offered into evidence until the formal hearing. The pre-filing practice

is common in commission proceedings due to the ordinarily complex nature of the testimony and considerable use of expert testimony. The practice is an aid to save hearing time and to assure accuracy in witnesses' testimony. *AFL–CIO, supra* at 1245. The Commission adopted and published the pre-filing rule pursuant to IC 8–1–2–47, which empowers the Commission to adopt reasonable rules governing the proceedings before it. As noted above, the Commission acquired subject matter jurisdiction of the proceedings when it held the formal hearing after giving proper notice pursuant to IC 8–1–1–8. Requiring the parties to pre-file evidence before the hearing date, pursuant to a properly adopted rule, does not affect its subject matter jurisdiction.

■ As a consequence, HBAI does not have standing to object to the pre-filing date set by the commission. The pre-filing date was set for May 4, 1987. The petition to intervene was filed May 6, 1987, and was granted May 11, 1987. An intervenor is bound by all rulings prior to the time he is made a party and must accept the procedural posture at the time of intervention. *Sexton, supra* at 1297; *L.S. Ayres & Co., supra* 351 N.E.2d at 824. Furthermore, HBAI has not shown that it was prejudiced by the pre-filing date. Although it was not allowed to introduce evidence at the hearing, it did have the opportunity to cross-examine the witnesses and to file a Statement of Interest with the Commission at the conclusion of the hearing. It is apparent from the Commission's June 1 order that the statement filed by HBAI was considered by the Commission in reaching its determination.

### IV.

### *Contrary to Law*

■ Finally, HBAI raises the issue whether the Commission's June 1 order as it concerns the treatment of CIAC is contrary to law. When determining whether a

---

**2.** The majority of the public notices were published on April 25, 1987, nine days before the pre-filing date of May 4, 1987.

Commission's order is contrary to law, we use a two-tier standard of review. First, we must determine whether the Commission's basic findings of fact are supported by substantial evidence in the record and then whether the Commission's ultimate conclusions are reasonable based on those findings. *Citizens Action Coalition v. Public Service Company* (1983), Ind.App., 450 N.E.2d 98, 102, *reh. denied.*

HBAI contends that the Commission's ultimate conclusion that the Executive Committee's recommendations are reasonable and in the public interest are not supported by its findings of basic fact. Specifically, HBAI argues that the Commission's finding that the "gross up" method may have the effect of impeding growth and development in certain areas by increasing the cost of water and sewer main extensions does not lead to the conclusion that allowing the utilities to use this method is in the public interest. However, HBAI overlooks the fact that the possible impediment to economic growth in some areas was the reason the Commission approved the alternative methods which do not pass the tax liability to the main extension applicant. The order provides greater flexibility in shifting the tax burden to those in the best position to bear it (the developer, the utility, or the rate payer) depending upon the particular circumstances of the case. We conclude the Commission's order is reasonable and in the public interest based on the evidence in the record.

HBAI's real complaint is with Rule 25 because it does not account for the tax related benefit to the utility in the form of depreciation of the main extension or for the situations where the utility's effective tax rate may be less than 34%. These concerns were raised at the hearing and in HBAI's Statement of Interest. Such considerations were beyond the scope of the hearing resulting in the June 1 order. As a result, the Commission initiated a formal proceeding to address these concerns and other possible changes in Rule 25 in light of TRA–86. Consequently, HBAI's issue regarding the technical application of Rule 25 is not properly before us.

The Commission's June 1 order is affirmed.

GARRARD, P.J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I

I concur in Part I, *Standing.*

II

I concur in result with respect to Part II, *Notice.* The majority opinion implies that the giving of notice pursuant to IC 8–1–2–59 and 8–1–1–8 are condition precedents to the acquisition of subject matter jurisdiction. I respectfully disagree. *See L.S. Ayres & Co. v. Indianapolis Power & Light Co.* (1976) 2d Dist. Ind.App., 169 Ind.App. 652, 351 N.E.2d 814, 846 (Sullivan, J. concurring). But because HBAI did attend the hearing and participated therein, at least to a limited degree, any notice defect attributible to the scheduling of the hearing has not been shown, of itself, to have caused prejudice.

III

I respectfully dissent from the majority decision under Issue III, *Pre–Filing.*

The Commission Order of April 21, 1987, which set the May 13 hearing date and which established the procedural rules to govern the matter, clearly provided for and contemplated that intervenors as well as respondent utilities should be permitted to submit direct evidence. Record at 23. The order, however, stated that "parties [presumably including intervenors] desiring to submit evidence ... must prefile such evidence ... by May 4, 1987." Record at 24.

HBAI's Petition to Intervene asserted that no party of record could represent its interests. The order granting intervention placed no restrictions or limitations upon the right of HBAI to present its position.

170 IAC 1–1–17(j) (1984 Ed.) does not authorize the Commission to restrict the

submission of evidence to that which is prefiled. To be sure, the Rule requires parties to prefile prepared testimony and exhibits but if the period for the preparation and filing of such evidence is so short as to effectively deny the right to present evidence, it is contrary to law.

Furthermore, 170 IAC 1–1–17(d) contemplates the submission of evidence at the hearing in addition to any pre-filed evidence:

"The Presiding Commissioner, Deputy Commissioner or Examiner shall determine the order in which intervenors shall introduce their evidence."

As stated by the majority in *L.S. Ayres & Co. v. Indianapolis Power & Light Co.,* *supra,* 351 N.E.2d at 826:

"Prefiled testimony and exhibits do not preclude or restrict the presentation of live testimony. The purpose of the prefiling practice is to save hearing time and to assure accuracy. Hearings before the Commission necessarily require considerable expert testimony and complex accounting exhibits."

Here, however, HBAI was denied the opportunity to submit any testimony or evidence at the hearing. It was afforded only an opportunity to submit a post-hearing "statement [of its] interests ... as supported by the record." Record at 816. Quite clearly, since HBAI did not have an opportunity to prefile testimony or exhibits and since it did not have an opportunity to submit live testimony at the hearing, its position or interest was not likely to be supported by the record of evidence submitted by other entities.

The rulings which effectively denied HBAI the right to submit direct evidence, coupled with the extremely limited period for the prefiling of prepared testimony and exhibits, demonstrate sufficient prejudice to warrant reversal.

Although the Commission may have, in its discretion, denied intervention to HBAI, it did not do so. Having granted intervention the Commission was obligated to afford the intervenor, along with other participants, a meaningful opportunity to present its position. The Commission did not do so in this instance. I would reverse and remand upon this issue.

## IV

I further dissent with respect to the basic decision of the Commission as set forth in its order of June 1, 1987. To the extent that it gives the *utilities* the option to utilize the "gross-up" method of tax recoupment, it is invalid. It is tantamount to putting the fox in charge of the henhouse.

It may be that the attack in this regard is directed against the "gross-up" method utilized by the utilities as a method of recovering taxes which the utilities construe as another cost of construction covered by 170 IAC 6–1–25 (1984 Ed.). In any event, to the extent that the June 1 order gives the Commission approval to this tax recovery method, it should be overturned.

I have not retreated from the position stated in *City of Evansville v. Southern Indiana Gas and Electric Co.* (1975) 2d Dist. Ind.App., 167 Ind.App. 472, 339 N.E.2d 562, 598, that a utility should not use consumer contributions as a cost of construction and to include that amount as part of the rate base, i.e., as a part of the utility's net investment, *unless* that contribution is entirely refunded to the applicant-consumer. Therefore, I also conclude that the second alternative authorized by the Commission, the Partial Tax Expense, is contrary to law.

The third option provided by the Commission order gives to the applicant (here the developer) a Hobson's Choice. Either the applicant must subject itself to the invalid gross-up collection method or must forego the refund now provided for applicants to recoup that portion of CIAC which represents three times the annual estimated revenue anticipated by virtue of the extension.

There is an additional reason why the alternatives authorized by the Commission are erroneous. In contemplating recovery of the tax upon contributions to costs of construction, the Commission authorizes charging the customer at the maximum tax rate of 34% whereas the utility might well pay the tax at a lesser rate. This eventual-

ity constitutes an unjustified windfall to the utility.

I would reverse and remand to the Commission with instructions to vacate its June 1, 1987 order.